CHILDS, Appellant, vs. DAHLKE and others, Respondents.

*October 10—October 29, 1912.*

*Plats: Width of street: Nuisance: Building erected in street: Abatement: Waters: Hydraulic canal: Riparian rights: Ownership of stated amount of water power: Rights and remedies.*

1. Evidence showing, among other things, that a platted street, at the only point where its width was indicated in figures, was marked distinctly "49½ wide;" that the public travel was generally confined to that width; and that the south line of an hydraulic canal, shown on the plat but not constructed until afterward, was sixty-six feet north of the south line of the

street and was intended by the person who made it to be con-structed entirely on her own land, is *held* to sustain a finding that the street was only forty-nine and one-half feet wide and that it did not border upon the canal.

2. In such case the fee of lots abutting on the south side of the street stops at the center of the street, and the owners have no riparian privileges on the canal, regardless of whether it is . navigable or not.

3. Plaintiff was the owner of certain lots on the south side of the street, with the right by deed to draw for use thereon 150 inches of water from the hydraulic canal, and had exercised such right for more than twenty years by means of a conduit crossing the street and the strip of land north of it and enter-ing the canal opposite his lots. After a flood had destroyed the works in part and washed away portions of the street in front of plaintiff's lots and the land north of it, defendants re-stored the land which was washed away, shortened the canal, and constructed an electric lighting plant in part upon the street in front of plaintiff's premises and in part upon the strip of land north of the street, thereby making it impossible for plaintiff to obtain his 150 inches of water as before or with-out increased expense. *Held*, that plaintiff was entitled to have the lighting plant, so far as it encroached upon the street (but not beyond that), abated as a nuisance, and that defendants should be required at their own expense to make the proper changes, constructions, and connections with the canal so as to effectively deliver to plaintiff the 150 inches of water to which he was entitled, at the north line of his lots.

APPEAL from a judgment of the circuit court for Mar-quette county: A. H. REID, Judge. *Modified.*

This action was brought to quiet plaintiff's title to mill lots 6 and 7 of the recorded plat of Neshkoro in Marquette county, together with 150 inches of water to be drawn from the mill-pond and hydraulic canal at any point on said lots under ten-foot head, to be measured in the conductor where it issues .on the wheel or wheels, and to abate as a nuisance a certain power house and building erected by defendants in "Mill street," which it is alleged shut off access to and use of water and power on the premises; and to compel the defendants to restore the dam and hydraulic canal and fill up Mill street between plaintiff's lots and the canal and river, and to restore

the same to their former condition as they existed prior to the flood of June 6, 1905; and immediately to build and perpetually maintain a suitable bulkhead and gate in the canal for the plaintiff's use in taking said 150 inches of water therefrom, and to permit proper connection to be made therewith by plaintiff between said lots and said dam and canal substantially as existed prior to June 6, 1905; and for damages and injuries to plaintiff's property and for other relief.

The village of Neshkoro, including the land in controversy, was platted by Helen M. White, proprietor, September 21, 1852, and recorded September 25, 1852. The diagram on page 85, taken from the plat, shows the premises in question.

The defendants answered by way of admissions and denials. The court made very full findings upon all the questions of fact litigated upon the trial and rendered in accordance with said findings the following judgment (omitting formal parts) :

"It is considered and adjudged:

"1. That the plaintiff was, at the time of the commencement of this action, and now is, the owner in fee simple absolute, of mill lots 6 and 7, fronting on Mill street, in the plat of the village of Neshkoro, in Marquette county, in the state of Wisconsin, together with the right to draw and use 150 inches of water from the mill-pond and canal described in the complaint and in said findings, for power, at any point on said lots 6 and 7, under a head of ten feet, and rights appurtenant thereto, the water to be measured at the conductor where it issues onto the wheel or wheels on said mill lots 6 and 7, and his rights and interest in said premises as such owner in fee simple, and his rights and interest in said water power, and appurtenant rights, which are the same granted and defined in the deed from George Osman and wife and Salem W. Richardson and wife to Thomas Wells, dated September 17, 1866, and recorded in the office of register of deeds of said Marquette county October 1, 1866, in volume 9 of deeds, on page 68, through which deed plaintiff derived his title, is hereby declared and established.

"2. That the defendants, *Charles T. Dahlke, Edward J.*

*Dahlke, Gustav E. Dahlke,* the *Neshkoro Milling Company,*
a corporation, and *Neshkoro Light & Power Company,* a cor-
poration, and all persons claiming under them, or any or

either of them, subsequent to the filing of the notice of the
pendency of this action, to wit, February 7, 1911, be and they
are and each of them is hereby forever barred from any and
all claims of right or title to the said premises or to said ease-

ment or right to draw or use said water or lien thereon, or any part thereof.

"3. That the width of Mill street in front of said mill lots 6 and 7 be and is hereby established at 49½ feet, excepting east of the point where the north line of said street deflects southward to connect with the south line.

"4. That plaintiff is owner of an easement consisting of a right to tap the hydraulic canal and pond described in said complaint and findings, for the purpose of drawing the water to which he is entitled as herein adjudged, and to draw said water to any part of said mill lots 6 and 7 and there use the same, and to construct and maintain all necessary aqueducts or other devices for such purpose in and across Mill street and the land between said Mill street and said canal and pond.

"5. (a) That the nuisance described in said complaint and findings, to wit, the new electric power house and its additions and foundations, together with the water-wheels, dynamos, shafting, machinery, appliances, and structures connected with or appurtenant thereto, so far as the same are within the limits of said Mill street, be abated and removed by the said defendants from the limits of Mill street as herein established on or before May 18, 1912.

"(b) That in the event said defendants neglect or refuse to abate said nuisance before May 18, 1912, that a warrant do issue to the sheriff of Marquette county, Wisconsin, out of this court, under the seal thereof, commanding said sheriff to abate and remove said nuisance at the expense of said defendants, in the following manner, to wit, by wholly razing and removing said building, together with the water-wheels, dynamos, shafting, machinery and appliances, and other structures connected with or appurtenant thereto from within the limits of said Mill street, and that in case such warrant be issued and executed, the said sheriff collect his own fees and charges and all of the expenses of such abatement and removal of and from the said defendants in the manner provided by law, or

"(c) That upon the neglect or refusal of the defendants to abate and remove said nuisance as aforesaid or to otherwise comply with this judgment, upon filing an affidavit showing such neglect or refusal, the plaintiff may apply to the court

for an order for the enforcement of the same in such manner as to the court may seem proper.

"6. That plaintiff have leave to bring and maintain another action to recover the damages which he has suffered by reason of the shortening of the hydraulic canal and relocation of the gates and other changes in the premises subsequent to the flood of 1905.

"7. That the plaintiff, *W. O. Childs,* do have and recover of and from defendants, *Charles T. Dahlke, Edward J. Dahlke, Gustav E. Dahlke,* the *Neshkoro Milling Company,* and *Neshkoro Light & Power Company,* the costs and disbursements of this action, taxed and allowed at the sum of $320.18 (three hundred twenty and 18/100) dollars.

"Dated December 8, A. D. 1911.

"By the Court,                    A. H. REID, Judge."

From this judgment plaintiff appealed to this court.

*John J. Wood, Jr.,* attorney, and *B. R. Goggins,* of counsel, for the appellant.

For the respondents there was a brief by *E. F. Kileen* and *D. W. McNamara,* and oral argument by *Mr. McNamara.*

KERWIN, J. The first, second, third, and fourth assignments of error may be treated together, since they involve the controversy over the width of Mill street, and whether the fee in the plaintiff's lots 6 and 7 extends to the hydraulic canal, so called on the plat.

It is established by the findings and the evidence that the plaintiff is and was before the commencement of this action the owner of lots 6 and 7 fronting on Mill street, together with 150 inches of water to be drawn from the mill-pond at any point on the lots aforesaid under a head of ten feet, the water to be measured at the conductor where it issues onto the wheel or wheels; that the deed through which plaintiff claims title provides that the parties of the first part are to keep up and maintain and keep in repair the dam at said mill-pond, except when the necessity for such repairs is occasioned by the carelessness of the said party of the second

part, in which latter case the said party of the second part is to make the necessary repairs, and in all cases the said repairs are to be made without delay; that a dam was constructed by legislative authority on White river in 1851 and a plat made and recorded in 1852 covering the property in question, which shows Mill street north of plaintiff's lots and south of the hydraulic canal; that there was a head of ten feet of water on the dam before the hydraulic canal was constructed; that, by reason of their ownership of the dam and several conveyances through which they took title and mesne conveyances upon which plaintiff took title, the defendants are under obligation to maintain a dam and power substantially as it was when their grantor, Thomas Wells, took title in 1866; that the surface of mill lots 1, 2, 3, 4, 5, and 6 and part of 7 adjacent to the dam and Mill street was about the elevation of the surface of the dam and Mill street; that the old bed of White river, extending easterly from the dam, was some ten feet lower than the crest of the dam, and the water for hydraulic purposes for use on said lots could only be drawn from the pond; that the dam and Mill street on top of said dam extended from near the northwest corner of mill lot 1 across the valley of White river in a semi-circular course northeasterly and easterly to about State street, thence Mill street continued easterly to its end throughout its whole width on the natural surface of the ground, which sustained an elevation of some ten or twelve feet above the ordinary surface of the water in the river in a state of nature; that on the plat at a point opposite mill lots 3 and 4 on Mill street west of State street appear the words and figures "49½ wide;" that Mill street is a public highway throughout its entire length; that plaintiff owns an easement or right of way in lands to the north of mill lots 6 and 7 to the canal to conduct from said canal to any place on said lots the water power owned by him.

The court also found that in 1855 H. G. Otis Childs and

Sylvester Craig, by conveyances from the owner, became the owners in fee of mill lot 5, together with 100 inches of water to be drawn from the pond, which afterwards became the property of Felix Dombrowski, and that said 100 inches of water power is a first call on said water power, and that the plaintiff's 150 inches is the second call on said water power; that through due mesne conveyances from the original owner, Helen M. White, who made and recorded the plat, the defendant *Neshkoro Milling Company* became the owner of mill lot 1 in block E and mill lots 2, 3, and 4, together with the remainder of the water power; that the dam was constructed prior to the making of the plat; that the hydraulic canal delineated on the plat had not been constructed at the time the plat was made, but the water of the pond extended in a depression on the north side of Mill street to a point about a rod east of the east line of State street; that at the time of platting, Mill street had a water boundary on the westerly and northerly side from near the northwest corner of mill lot 1 to a point a trifle east of the east line of State street, but no water boundary east of that point, although such boundary was delineated on the plat; that Mill street as dedicated was 49½ feet wide at all points except the east end, and the facts proved failed to show any dedication of any additional strip widening Mill street east of State street beyond the width of 49½ feet, and that the hydraulic canal was constructed with its south line east of State street to the angle opposite lot 6 some sixty-six feet north of the south line of Mill street; that Helen M. White in making the plat intended that Mill street should be 49½ feet wide throughout its course, excepting the wedge part at the easterly end, and intended to construct the canal upon her own land along the north side of that street; that the title of the owners of lots 6 and 7 extends to the center of Mill street of the width before stated and no farther, except the easement to tap the canal and conduct therefrom the 150 inches of water appurtenant to said lots; that mill

lots 2 and 7 inclusive have no natural northern riparian boundary, and no riparian rights were naturally appurtenant thereto on the north side thereof.

The foregoing findings, or some of them, are attacked by appellant as not supported by the evidence, and especially it is insisted that Mill street is more than 49½ feet wide and extends to the hydraulic canal, and the title in fee to plaintiff's lots extends to the canal. We think the finding that Mill street was not intended by the proprietor of the plat to extend to the south line of the hydraulic canal is well supported by the evidence. The figures on Mill street "49½ wide" are significant on this point. The fact that the evidence and findings show that while the whole space between lots 5, 6, and 7 and the south line of the canal was used by proprietors of the lots to some extent, it appears the travel by the public generally was upon the 49½-foot strip along lots 5, 6, and 7. Moreover, it is quite apparent from the established facts that the canal was intended to be and was constructed wholly upon the land of the proprietor of the plat through whom plaintiff claims. Other findings heretofore recited and supported by the evidence show that it was not the intention of the platter that Mill street should extend to the hydraulic canal.

Nor is it necessary to consider whether White river or the hydraulic canal is navigable, because in our view of the case the question is wholly immaterial. Mill street opposite lots 6 and 7 not extending to the canal, the fee in such lots stops at the center of Mill street. Of course, since the plaintiff's lots did not extend to the hydraulic canal, they could not under any circumstances have riparian privileges upon the canal even if navigable, therefore there is no question of riparian rights in the case.

Counsel for appellant rely upon *Smith v. C., M. & St. P. R. Co.* 83 Wis. 271, 50 N. W. 497, 53 N. W. 550; *Mariner v. Schulte,* 13 Wis. 692; *Smith v. Ford,* 48 Wis. 115, 2 N. W. 134, 4 N. W. 462; *Brown v. Baraboo,* 98 Wis. 273, 74 N.

W. 223; *Waite v. May,* 48 Minn. 453, 51 N. W. 471. An examination of these cases convinces us that they do not rule the situation here.

But it is further insisted under the fifth and sixth assignments of error that if it be held that the plaintiff's title extends only to the center of Mill street with an easement in the north half of Mill street and the land between the hydraulic canal and Mill street to reach the water power, the judgment is, nevertheless, wrong in limiting the plaintiff's right to reach the canal and obtain water effectively. True, the defendants are bound to maintain the dam and water power and furnish the plaintiff on his lots with the 150 inches of water called for in the deed, but they have a right as owners of the water power and the land upon which it is maintained to use such property for their own benefit, though not in such manner as to impair the plaintiff's use of his 150 inches of water which he has a right to use upon his lots 6 and 7 under a ten-foot head.

The court below found upon sufficient evidence that in the fall of 1866 plaintiff's grantor, Thomas Wells, who then owned mill lots 6 and 7 and appurtenant 150 inches of water, built upon said lots a woolen mill and connected the same with the canal at a point about three feet east of the west line of lot 6 extended north, by means of a conductor or aqueduct in and across the street, through which he conducted water for water power to operate his mill continuously for more than twenty years; that about 1884 said Thomas Wells built a sawmill addition to said woolen mill on the north side thereof and wholly within the limits of Mill street; that the west line of said woolen mill and sawmill was located about two feet east of the waste-gates in the canal as the same were prior to the flood of 1905; that the evidence lays no foundation for any claim of title by adverse possession either as against the public or defendants to any lands lying north of the center of Mill street; that in June, 1905, there was a

flood in White river such as to wash out the gates and the south bank of said canal and the ground of Mill street east of State street between mill lots 6 and 7 and the canal to some extent; that in 1905, after the flood, the defendants *Dahlke*, the town of Neshkoro aiding, reconstructed said canal, partially filling in State street, and locating the south line of the canal a few feet north of its former south line and locating the waste-gates therein about thirty feet westerly of their former location; that no change in the south line of the canal or the north line of Mill street was made until after the flood and washout in 1905; that in the beginning of the year 1908 the defendants *Dahlke* and the *Neshkoro Milling Company* constructed a new electric power house on the south side of the canal and between it and plaintiff's premises, and later constructed an addition thereto to the westerly; that from State street to the waste-gates the south line of the canal is supported by a stone and cement retaining wall and there is no way to connect plaintiff's mill lots with the canal except by putting a water conductor upon some part of lot 5 or penetrating the foundations of the new power house, and no way to obtain water otherwise for power on mill lots 6 and 7 than the tapping of the wooden bulkhead at the end of said power house in which are located the water-wheels of the defendants; that said water power appurtenant to mill lots 6 and 7 may not be quite so readily obtainable under present circumstances as formerly, but it would require only a greater length of conduit and an unimportant additional expense to tap the canal; that to compel defendants to reconstruct the new waste-gates and canal would be a great expense, entirely out of proportion to any advantage thereby brought to plaintiff; that all surveys show that the south line of the canal from the bridge on State street to the new power plant is now more than 49½ feet north of the north line of mill lots 5 and 6, and the same evidence shows that the major portion of the new power plant is located within the street, and that the north-

east corner of said new power plant is approximately three feet north of the north boundary line of Mill street; that said new power house is an obstruction to Mill street and a nuisance thereon and excludes plaintiff from access to the canal and obstructs his right of way for a conductor, and obstructs his approach to that part of lots 6 and 7 owned by him, and that said new power plant is a public nuisance which does the plaintiff special damage; that said new power plant also obstructs the drawing from the canal of 150 inches of water to lots 6 and 7; that if said power plant should be continuously maintained as located it would materially reduce the value of plaintiff's property, and plaintiff has sustained and would sustain in the future damages differing not merely in degree but in kind from the damages sustained by the general public.

The contention of the appellant under this head is that defendants are bound to maintain the dam and power substantially as it was when Thomas Wells, grantor of plaintiff, took title in September, 1866; and that upon the established facts the plaintiff's right to his water power has been obstructed and substantially interfered with, and that the abatement of the new power plant should not have been limited to such part as encroaches upon Mill street; that plaintiff should not be required to leave his own land to tap the mill-pond or the bulkhead, and that full restoration of the canal and water power to its former condition should have been adjudged.

The court below substantially and correctly settled the rights of the parties by the judgment, except that it failed to award damages for the expense of making proper connections with the hydraulic canal in order to reimburse the plaintiff for the extra expense occasioned by the change in the hydraulic canal and the obstructions placed between plaintiff's lots and the canal, or to provide in the judgment that defendants make the proper changes, connections, and constructions at their own expense and maintain the same according to the terms of the deed through which plaintiff claims title.

The plaintiff is entitled to no other restoration and no further damages. It is thought best, however, to provide in the judgment that the defendants make the proper changes so as to furnish and deliver the 150 inches of water owned by plaintiff.

The case is therefore remanded with directions to modify the judgment by requiring the defendants to make the proper changes, constructions, and connections in the canal, water power, and land between lots 6 and 7 and the canal so as to effectively deliver 150 inches of water, drawn from the canal or pond under a ten-foot head, on the north line of said lots 6 and 7 at such point as may be ordered by the court according to the terms of the deed through which plaintiff derives title, within such reasonable time as may be fixed by the court, and, if necessary, further evidence may be taken in order to enable the court to make the proper modification as indicated herein. That the sixth paragraph of the judgment providing that plaintiff have leave to bring and maintain another action to recover the damages he has suffered by the shortening of the canal and relocation of the gates and other changes in the premises subsequent to the flood of 1905 be omitted from the judgment.

*By the Court.*—The judgment of the court below is ordered modified as indicated in this opinion, and the cause remanded for further proceedings accordingly, the appellant to recover costs in this court, except that the costs for printing be limited to $50.