Childs, Respondent, vs. Dahlke and others, Appellants.

*February 10—March 2, 1915.*

*Judgment: Definiteness: Necessary provisions: Rights in water power: Restoration of premises: Repairs.*

1. A judgment requiring defendants to do filling upon land is sufficiently definite if, with the aid of an engineer, the limits of the filling may be determined from the description in the judgment,

construed according to the physical condition of the premises at the time the judgment is entered.

2. In an action to quiet title to certain lands and water rights and compel restoration of the premises to their former condition, where a duty to make certain repairs in accordance with the deed under which he claimed rested upon plaintiff as a matter of law upon the facts found and the judgment entered, it was not necessary that the judgment should specifically so provide.

APPEAL from a judgment and an order of the circuit court for Marquette county: A. H. REID, Judge. *Affirmed.*

This action was brought to quiet title and determine certain rights between plaintiff and defendants. The action was commenced in January, 1911. Judgment was entered December 8, 1911. The case was appealed to this court. *Childs v. Dahlke,* 151 Wis. 82, 138 N. W. 277.

On the first hearing very full findings were made determining the rights of the parties, and this court on appeal found that the court below substantially and correctly settled the rights of the parties by judgment, except that it failed to award damages for the expense of making proper connections with the hydraulic canal in order to reimburse the plaintiff for the extra expense occasioned by the change in the hydraulic canal and the obstructions placed between plaintiff's lots and the canal, or to provide in the judgment that the defendants make the proper changes and connections at their own expense and maintain the same according to the terms of the deed through which plaintiff claims title, and the case was remanded with directions to modify the judgment by requiring the defendants to make proper changes in the canal and water power and land between lots 6 and 7 and the canal so as to effectively deliver 150 inches of water, drawn from the canal or pond under a ten-foot head, on the north line of lots 6 and 7 according to the terms of the deed through which plaintiff derives title, and if necessary to take further evidence to enable the court to make the proper modification, and further ordering that the paragraph of the judgment providing

for leave to bring and maintain another action to recover damages be omitted from the judgment. *Childs v. Dahlke, supra.* After the record was remanded in accordance with the mandate referred to further evidence was taken. The court made findings of fact dated July 17, 1913, and the parties afterwards appeared before the court and viewed the premises, and, further evidence being taken, the court amended the findings of July 17, 1913, and made further findings as follows:

"1. The hydro-electric power plant of the defendants which was heretofore adjudged to be abated and removed from Mill street has been dismantled to the extent of removing all of the machinery therefrom, and the foundations and superstructure of the building still stand awaiting final judgment herein, at which time the defendants claim they will proceed in accordance with said judgment to remove said buildings and foundations so far as necessary.

"2. Since the former trial of this action, to wit, in the year 1912, defendants have constructed a new south wall of the canal of concrete, in substantial and permanent form, commencing at a point near the north side of said former plant adjudged to be removed and at the east side of the intake flume running to said former plant, and extending from that point due east approximately parallel with the north line of Mill street and 7.7 feet north of the north line of Mill street to a point east of the old waste gates in said canal as they existed prior to the flood in 1905, and at the easterly end of said wall have constructed a hydro-electric power plant wholly on the north side of Mill street. Exhibits 1005, 1006, and 1007 are copies of the architect's plans, according to which said new power plant and canal extension was constructed. Said new power plant occupies in part the channel in which waste water was discharged from the canal prior to the flood of 1905. The water from the power plant adjudged to be removed has been discharged, ever since its use began, into a channel next adjoining on the south the new wall and plant erected in 1912. Between the westerly end of the new south wall and the easterly end of the old south concrete wall of the canal as it existed at the time of the former trial, there is a space of approximately fifteen feet in width through which

water has been and is now admitted to the wheel pit and bulkhead of the former plant which has been adjudged to be removed. Said new wall, together with structures formerly existing, extends the canal further east than it ever existed prior to the former trial, and is as near to the north line of Mill street as was the south line of the canal as it existed in September, 1866, and thereafter until the flood of 1905. If said two above mentioned south walls of the canal were united by a wall closing the fifteen-foot opening leading to the plant ordered to be removed, said canal would be complete, and the removal of the superstructure and foundations of the former plant would remove all obstructions except the river channel and water therein, in the way of the plaintiff reaching said canal and drawing for use, as his predecessors were accustomed to do, the 150 inches of water to which he is entitled. By a uniform and continuous course of construction of the grant to plaintiff's predecessor, Thos. Wells, on September 17, 1866, the duty to construct and maintain the conduit for said 150 inches of water has always rested on said Wells and his assigns.

"3. Defendants have requested to be permitted to construct a waste way along the south side of the new south wall and new power plant recently constructed to the easterly end of said new power plant. If said waste way, including its south wall, does not occupy more than 7.7 feet in width, the same will not encroach upon Mill street and will not be unlawful.

"4. The old waste gates as they existed before the flood of 1905 were located on the north line of Mill street and approximately at the southwest corner of the new power plant building erected in 1912, and approximately fifty-eight feet east of the west line of lot 6 projected north. The water from the pond was conducted to said gates by a conduit about twelve feet long and twelve feet wide. As Mill street then existed, the surface thereof on the south side of the canal as far east as the west end of said last mentioned conduit was higher than the 'trunk,' so called, or conduit which conducted water from the canal to the wheel pit or the woolen mill. After removal of the former power plant adjudged to be removed, the space between the canal and the north line of lot 6 will be several feet lower on an average than the elevation of said trunk or conduit to the woolen mill, and is now occupied in part by water channel and water. A minor portion of the water dis-

charged from the wheels installed in 1912 and shown on Exhibit 1006 is discharged to the south into said channel through openings marked 'a,' 'b,' 'c,' and 'd' on Exhibit 1005. The major portion of the water is discharged to the east through the opening marked 'e' on Exhibit 1005. The most westerly of said openings on the south side is approximately forty feet east of the west line of lot 6 projected north. If a retaining wall be built starting from the canal wall immediately west of said westerly opening and running thence south to the north line of Mill street, thence east along the north line of the street twenty feet, thence southeasterly to a point on the north line of lot 6, ten feet or more east of the west side of the old woolen mill (or in a direct line between said points, as the defendants may elect), and if thereupon all the space between lot 6 and the canal which lies west of such retaining wall be filled and kept filled with earth or its equivalent to a height of one foot above the bottom of the original trunk or water conduit leading to the old woolen mill, and if an opening in the canal wall as hereinafter provided be maintained, the plaintiff will be able to obtain and use the water from the canal to which he is entitled as conveniently and economically as the conditions before the flood of 1905 permitted."

The court concluded:

"1. It is the duty of the defendants under the covenants contained in the deed by Osman and Richardson and their wives to Thomas Wells, dated September 17, 1866, to completely remove the foundations and superstructure of the former power plant adjudged to be removed from Mill street and to fill in and keep continuously filled the intervening space between the south wall of the canal and the north line of lot 6, extending as far east as the proposed retaining wall hereinbefore described and sufficiently to the west to meet the high land, with earth or its equivalent to a height not less than one foot above the bottom of the original conduit or trunk running to the woolen mill as it existed when in use, and to make and maintain in the south wall of the canal an opening ready for use of the plaintiff and located substantially at the same height as formerly and approximately three feet east of the west line of lot 6 projected north, and of sufficient size to freely supply to plaintiff the 150 inches of water under a ten-foot head, to which he is entitled.

"2. Plaintiff ought to recover his taxable costs and disbursements in this proceeding, but not exceeding in all $25, besides disbursements in addition to costs included in first judgment.

"Let judgment be entered accordingly to the foregoing and the mandate of the supreme court.

"Dated September 22, 1913."

On October 17, 1913, the findings made September 22, 1913, were amended by striking out from finding number 2 the following words as they appear therein, to wit: "and extending from that point due east approximately parallel with the north line of Mill street and 7.7 feet north of the north line of Mill street to a point east of the old waste gates," and by inserting in lieu thereof the following: "and extending from that point easterly and nearly parallel with the north line of Mill street, and being 7.7 feet north of the north line of Mill street at the westerly end of said new south wall to a point east of the old waste gates;" and by striking out from the third finding the following: "occupy more than 7.7 feet in width, the same will," and also the word "and" after "street," and by inserting in lieu of "and" the word "it."

Afterwards and on November 6, 1913, the court rendered the following judgment:

"It is considered, ordered, and adjudged, that said judgment entered herein December 8, 1911, be and the same hereby is modified in the following particulars, to wit:

"1. By striking therefrom the whole of paragraph '6' thereof and inserting in lieu of the paragraph so stricken the following:

"6. That it is the duty of the defendants, and they are hereby ordered and required, to completely remove from said Mill street the foundations and superstructure of the power house described in the complaint herein and to fill in and to keep continuously filled the intervening space between the south wall of the canal and the north line of said mill lot 6 extending easterly to a line described as commencing at a point in the south wall of said canal as it now exists, immediately west of a point therein located forty (40) feet east of the west line of said mill lot six (6) projected north, and running

thence south to the north line of Mill street; thence east twenty (20) feet along the north line of Mill street; and thence southeasterly to a point in the north line of said mill lot six (6), ten (10) feet or more east of the west side of the 'old Wells woolen mill' (or in a direct line between said points, as the defendants may elect) ; that is to say, to fill in and keep continuously filled the intervening space between the south wall of the canal, as it now exists, and the north line of said mill lot six (6), extending as far east as the retaining wall described in the fourth finding of facts and in the first conclusion of law herein (of date September 22, 1913), and also extending from said above described line and retaining wall sufficiently to the west to meet the high land, with earth or its equivalent to a height of not less than one (1) foot above the bottom of the original conduit or trunk which ran and extended from said canal to the former 'Wells woolen mill,' as such conduit or trunk existed when in use, and to make and maintain in the south wall of said canal an opening ready for the use of the plaintiff and his assigns, located substantially at the same height as such an opening in the south bank of said canal formerly existed when such conduit or trunk was in use. Said opening to be located approximately three (3) feet east of the west line of said mill lot six (6) projected north, and said opening to be of sufficient size to freely supply to plaintiff the one hundred fifty (150) inches of water under a ten-foot head to which he is entitled.

"(a) That in the event of said defendants' neglect or refusal to fully comply with and execute the provisions of this judgment that said warrant do issue to the sheriff of Marquette county, Wisconsin, out of this court, under the seal thereof, commanding said sheriff to abate and remove the said nuisance as hereinbefore provided, and also to completely remove from said Mill street the foundation and superstructure of the power house described in the complaint herein, and to fill in said intervening space as herein adjudged at the expense of said defendants, in the following manner, to wit: by wholly razing and removing said building, together with the water wheels, dynamos, shafting, machinery and appliances, foundations, superstructure and other structures connected with or appurtenant thereto from within the limits of said Mill street, and by filling in said intervening space between the south wall of said canal and the north line of said mill lot six (6), in

manner and form and to the extent herein adjudged, and that in case such warrant be issued and executed, the said sheriff collect his own fees and charges and all of the expenses of such abatement and removal of and from the said defendants in the manner provided by law, or

"(b) That upon the neglect or refusal of the defendants to abate and remove said nuisance as aforesaid or to otherwise comply with this judgment, upon filing an affidavit showing such neglect or refusal, the plaintiff may apply to the court for an order for the enforcement of the same in such manner as to the court may seem proper.

"2. That in addition to the costs heretofore adjudged to him by said judgment, the plaintiff, *W. O. Childs,* do have and recover of and from the defendants, *Charles T. Dahlke,* *Edward J. Dahlke, Gustav E. Dahlke,* the *Neshkoro Milling Company,* and the *Neshkoro Light & Power Company,* his costs and disbursements, taxed and allowed at the sum of one hundred seventy-three dollars and ninety-three cents.

"Dated November 6, 1913."

On hearing the court below denied a motion to open the default and allow exceptions to be filed and bill of exceptions settled.

The appeal is from the judgment and order denying application to open default, file exceptions, and settle bill of exceptions.

*J. H. Davidson,* for the appellants.

*John J. Wood, Jr.,* attorney, and *B. R. Goggins,* of counsel, for the respondent.

KERWIN, J.   We are unable to say that the learned trial court abused its discretion in denying the application of appellants to open the default and allow the settlement of a bill of exceptions.   The appeal from the judgment must, therefore, be reviewed upon the findings and judgment.

We have set out at length the findings and judgment in the statement of facts, from which it appears that the trial court gave the case very careful attention and made very complete findings.

. It is argued by counsel for appellants that the judgment is so indefinite that it cannot be enforced. Counsel says the judgment is indefinite in that it fails to definitely describe the west boundary of the space to be filled as well as the height or depth of the filling. It appears that the court viewed the premises, and the physical condition thereof is well described in the findings and judgment. The location of the original conduit, monuments, and landmarks referred to must be taken to be visible in so far at least as to definitely show the line or level of the conduit referred to, the high land on the west, and the extent of the filling. All that is necessary is that the judgment be sufficiently definite that the limits of the filling may be ascertained from the judgment and record. 1 Black, Judgm. (2d ed.) §§ 117, 118, 123. With the aid of an engineer there would seem to be no difficulty in determining the limits of the filling from the description given in the judgment. That is sufficient. The judgment must be construed and the limits of the filling defined according to the physical condition as it existed at the time the judgment was entered.

Some point is made that there were two conduits on the premises, and that it cannot be determined which is referred to in the judgment. It is clear, we think, from an examination of all the findings on both trials and the judgment as modified, that the remains of the conduit appearing on the premises when the judgment was entered is the so-called original conduit and the one described in the modified judgment; that the filling is to be at least one foot above the bottom of such conduit, and such height can easily be determined. When such point of the height of the filling is determined, no trouble will be found in carrying the filling westerly to the point of high ground, because such point is shown by the physical condition of the premises and the courses and distances described in the findings and judgment.

The theory of the judgment obviously is to fill the space described to a point at least one foot above the bottom of the

conduit and then carry such filling westerly over the low ground until the elevated ground is reached, so that the space ordered filled shall be completed to a height as described in the findings and judgment. We think the description is sufficiently definite. *Miller v. Lavelle,* 130 Wis. 500, 110 N. W. 421.

Counsel for appellants further insists that the court below should have provided in the judgment that in accordance with the deed through which plaintiff claims he should be required to make repairs when such repairs were occasioned by the carelessness of the plaintiff. That provision clearly was unnecessary, because such duty rests upon plaintiff as matter of law upon the facts found and the judgment entered. *Childs v. Dahlke,* 151 Wis. 82, 93, 94, 138 N. W. 277.

Counsel further argues that it was not necessary that any filling be done, because the 150 inches of water might be delivered upon lots 6 and 7 in some other way than in the manner ordered. Counsel argues this proposition as though the evidence on the last hearing was before us. But since it is not, we cannot determine whether or not some other more practical method than the one ordered might have been ordered.

After a careful examination of the record we are satisfied that the judgment and order appealed from must be affirmed.

*By the Court.*—It is so ordered.