William C. WRIGHT, Appellant, v. Jean WRIGHT, Respondent.

Supreme Court

*No. 77-686. Argued September 11, 1979.—*
*Decided November 6, 1979.*
(Also reported in 284 N.W.2d 894.)

For the appellants there were briefs by *Robert E. Cook* and *Cook & Franke, S.C.,* attorneys, and *Godfrey & Kahn, S.C.,* of counsel, and oral argument by *Robert E. Cook* and *Gerald J. Kahn,* all of Milwaukee.

For the respondent there were briefs by *Bruce C. O'Neill* and *Fox, Carpenter, O'Neill & Shannon, S.C.,* of Milwaukee, and oral argument by *Bruce C. O'Neill.*

DAY, J. This case comes to the court by petition to review a decision of the court of appeals reversing

that portion of a divorce judgment amended by the circuit court. The court of appeals held that the circuit court had no authority to amend a ten year old divorce judgment to provide for payment by the former husband to the former wife of $102,840 representing the amount of federal income taxes due from her on $228,000 paid to her by him in monthly installments over a ten and one-half year period in accordance with the terms of the divorce judgment. The Court of Appeals rejected the wife's argument that such additional payment was either alimony under sec. 247.32, Stats. 1967 or an enforcement of the original judgment under sec. 247.01, Stats. 1977 on the theory the $228,000 was to be undiminished by income taxes.

William C. Wright and Jean Wright were married in 1948. In 1967 he commenced a divorce action and she filed a counterclaim. On October 4, 1967, the matter came on for a hearing before Honorable L. J. Foley, Jr., Circuit Judge. The parties stipulated that his complaint be withdrawn and that she be granted a divorce on her counterclaim as a default. Testimony was taken and the divorce was granted to her. The parties also entered into an oral stipulation in open court providing for the division of real and personal property, maintenance of insurance and investments, custody of children, payment of attorney fees and other matters. The combined assets of the parties at the time of the hearing had a value of $1,065,122 of which $269,018 was the separate property of Jean Wright and was awarded to her pursuant to the stipulation.

The stipulation was made part of the record through a process of asking questions of the parties to determine whether they understood and agreed to its provisions.

Questions were first directed to Jean Wright by her counsel. Among the questions were those relating to alimony and property division as follows:

*"Question:* That alimony be denied, you understand that?

*"Answer:* (by Jean Wright) Yes. . . .

*"Question:* That the defendant (sic) will pay you $228,000.00 within the next ten and a half years or ten years six months on the following terms: no less than $2,000.00 per month for the next six months after the entry of judgment and the sum of $1,800.00 per month for the balance of the term of the payment of that $228,000.00, do you understand that?

*"Answer:* (by Jean Wright) Yes, sir."

The stipulation provided that payment of the $228,000 would be secured by an escrow account funded with stock. If Mr. Wright died, the unpaid balance of the $228,000 would either be paid from his estate or from the escrow account. The payment of $228,000 was in addition to other property awarded to her.

William Wright's attorney then questioned him and asked:

*"Question:* You feel you fully understand the provisions thereof?

*"Answer:* (by Mr. Wright) Yes. . . .

*"Question:* Full and complete division of estate in lieu of any claim of alimony upon you by Mrs. Wright?

*"Answer:* (by Mr. Wright) Yes."

No objection was made to the answers given by either party regarding their understanding of the stipulation. No statement was made in the stipulation respecting the payment of taxes.

The court on the record granted a divorce to Jean Wright and dismissed the complaint of William Wright, granted custody of the children in accordance with the stipulation and stated "In all other respects the sipulation of the parties is acceptable. The court will make it a part of the record, the findings of fact, conclusions of law and judgment, holding that matter open as it relates to guardian ad litem fee."

The parties next appeared before the court on December 8, 1967, in a dispute over the wording of the findings of fact, conclusions of law and judgment, particularly with respect to the $228,000 payment to Jean Wright. Both counsel argued as to which of the parties would be responsible for the income taxes on the monthly payments.[1]

---

[1] (Counsel for Jean Wright)

"*Mr. Loeb:* All right, the transcript will speak for itself then. I would strenuously object to any modifications of the transcript or the judgment or the findings or the stipulation at this time.

"*The Court:* I don't think what we are involved in, Mr. Loeb, is a modification of anything and I agree with you that the Court would not be modifying, the question is the wording of the findings of fact, conclusions of law and judgment. There are substantial financial problems involved in the wording.

"*Mr. Loeb:* Exactly.

"*The Court:* The Court must word that in accordance with the judgment that was made or the findings of fact and conclusions of law that were made at the time of the trial. I would never forbid or foreclose a person to properly prepare an argument that they intended to make in an issue that has involved substantial rights of parties. . . .

"*Mr. Loeb:* I want to make this record clear at this time so there is no doubt about this whatsoever. It is considered on behalf of the defendant that as far as this periodic payment is concerned for ten and a half years is not taxable to her as alimony, period.

*(Counsel for William Wright)*

"*Mrs. Shellow:* We would like the record to show as far as the plaintiff is concerned that the stipulation which was entered into and the selection of the ten and a half years period as a period of time for the payment to be made of the property division in this matter was for purposes of having this sum, the $228,000.00 specifically mentioned, deductible to the plaintiff and it was this understanding which was had between counsel which enabled the stipulation to come into being. The purpose of the selection of the period to ten and a half years was for purposes of establishing the deductibility of such payments.

"*Mr. Loeb:* My reply to that, I do want to make a reply to that because the fact is that at the time the ten and a half years was mentioned at the two tables in this Courtroom when each of our

Counsel for William Wright proposed that the paragraph relating to the $228,000 read that "alimony be and hereby is denied and in lieu of said alimony and in full satisfaction of any claim therefor, and as a complete division of estate and to complete the division of the property of the parties, the plaintiff shall pay to the defendant the sum of $228,000.00 in 10½ years of entry of judgment, said sum to be paid at the rate of $2,000.00 each month for a period of six months and $1,800.00 each month thereafter for a period of 10 years."

The trial judge rejected the husband's proposed findings of fact and conclusions of law and instead adopted those submitted by counsel for the wife which provided in part:

"Twenty-second. That alimony be and hereby is denied.

"...

"Twenty-fourth. That as and for a complete division of estate and to complete the division of property of the parties, the plaintiff be and he hereby shall pay to defendant the sum of $228,000.00 within ten and one-half (10½) years of the date of this judgment; and payable on the following terms: No less than $2,000.00 per month be paid by plaintiff to the defendant for the first six months; that thereafter the plaintiff shall pay to the defendant no less than the sum of $1,800.00 per month

clients was present, I made it very specifically clear that we would not consider this as alimony or report it as alimony, that it was in truth and in fact a division of estate, period.

"*The Court:* All right.

"*Mrs. Shellow:* In lieu of alimony.

"*Mr. Loeb:* Even if it were in lieu or otherwise.

"*Mrs. Shellow:* Our only contention, Mr. Loeb, is that this is a division of estate in lieu of alimony.

"*Mr. Loeb:* If you do so, we warn you now, if you take it off as alimony, you proceed at your own peril.

"*Mrs. Shellow:* You fail to pay tax on it that's between you and your client, Mr. Loeb."

for the balance of the term of payment of $228,000.00 specified herein."

Findings of fact and conclusions of law were signed by the court on January 29, 1968. The judgment was signed and filed on February 2, 1968.

Each party took the position that the other should bear the federal income tax consequences of the monthly payments to Jean Wright. William Wright deducted the payments on his income tax return and Jean Wright failed to include the payments made to her as income. She took the position that the payments were a division of property rather than support under federal income tax law. The Internal Revenue Service assessed deficiencies against both parties.

The matter was litigated in the Tax Court[2] which ruled that the payments made to her grew out of his marital obligation of support and treated the payments as income to her for federal income tax purposes. The matter was then appealed to the Seventh Circuit Court of Appeals[3] which determined that the payments were periodic payments under §71 of the Internal Revenue Code[4] and includable as income to Jean Wright in the year received and deductible by William Wright under §215 of the Internal Revenue Code.[5] The ten and one-half year payment period was a factor in the decision of the federal courts.[6]

---

[2] *Wright v. Commissioner*, 62 T.C. 377 (1974).

[3] *Wright v. Commissioner Of Internal Revenue*, 543 F.2d 593 (7th Cir., 1976).

[4] 26 U.S.C.A. (I.R.C. 1954) §71.

[5] 26 U.S.C.A. (I.R.C. 1954) §215.

[6] The Federal Court of Appeals noted, "Had the parties intended these to be installment payments under Section 71(c)(1) rather than periodic payments under Section 71(a), they could easily have provided that the principal sum of $228,000.00 must be paid within ten years." *Wright v. Commissioner Of Internal Revenue*. 543 F.2d 593, 598 (7th Cir. 1976).

The resulting increase in taxes to Jean Wright was computed to be $102,840.

Jean Wright returned to the state court to try and recoup payment from her former husband for the tax assessment. The family court commissioner who reviewed her petition to modify the divorce judgment held that he lacked power to do so by virtue of sec. 247.32, Stats.,[7] and dismissed her petition. This occurred during 1977, approximately ten years after the divorce was granted.

Jean Wright then sought a *de novo* review of the family court commissioner's determination. She requested the judgment be modified to provide for alimony in an amount sufficient to pay the additional taxes or that her former husband be ordered to pay on a theory that the judgment meant to give her $228,000. free of any tax obligation and that the court was merely enforcing that judgment provision.[8]

The circuit court relying primarily on its interpretation of *Rotter v. Rotter*, 80 Wis.2d 56, 257 N.W.2d 861 (1977), amended the judgment by adding paragraph thirty-four to provide:

"That, in enforcement of this judgment and not as alimony, support or maintenance, (William Wright) shall pay to (Jean Wright) forthwith the sum of $102,840.00, which sum, in the intent of this court, shall not be

---

[7] (See footnote 10).

[8] "247.01. **Jurisdiction.** The circuit courts have jurisdiction of all actions affecting marriage and of all actions under s. 52.10 (or concurrent jurisdiction where other courts are vested with like jurisdiction), and have authority to do all acts and things necessary and proper in such actions and to carry their orders and judgments into execution as prescribed in this chapter. All such actions shall be commenced and conducted and the orders and judgments therein enforced according to these statutes in respect to actions in circuit court, as far as applicable, except as provided in this chapter and in s. 52.10."

includable in the income of (Jean Wright) for income tax purposes nor deductible from the income of (William Wright) for income tax purposes."

The amended judgment was signed by the clerk on March 3, 1978.

The Wisconsin court of appeals held that the trial court was without authority to enter the order and judgment appealed from, either under the provisions of sec. 247.01, Stats., or under sec. 247.32, and reversed. The matter is now before us on review.

There are two principle questions on review:

1. Did the circuit court have authority under sec. 247.01, Stats. 1977, to order payment of an additional $102,840 to Jean Wright under the theory it was merely enforcing the original divorce judgment?

We conclude that it did not have such authority.

2. Did the circuit court have authority under sec. 247.32, Stats. 1967, to modify the original divorce judgment to provide for additional alimony?

We conclude the answer is no.

1. *DID THE CIRCUIT COURT HAVE AUTHORITY UNDER SEC. 247.01 STATS. 1977, TO ORDER PAYMENT OF AN ADDITIONAL $102,840 TO JEAN WRIGHT UNDER THE THEORY IT WAS MERELY ENFORCING THE ORIGINAL DIVORCE JUDGMENT?*

In the case of *Rotter v. Rotter, supra,* relied on by the trial court, the husband had failed to comply with explicit language of the divorce judgment in which he was ordered to cooperate in the conversion of health insurance coverage for his ex-wife. He assured her that he would do so. As a result of her reliance on the court order and his promise she incurred substantial medical bills. The husband had allowed the

policy of insurance to lapse. The circuit court ordered the husband to pay the medical bills and this court upheld its authority under sec. 247.01, Stats. This court pointed out that that statute vests in the trial courts the authority to do all things necessary and proper to carry their orders and judgments into execution. This court held that the order was necessary to give effect to the divorce judgment and to protect the wife from the loss occasioned by the inaction of the husband. The court pointed out that without such authority the provisions of the judgment would have been of no effect. But it is apparent that the present case presents an entirely different set of circumstances than those confronting this court in *Rotter*. William Wright has complied with the original judgment. He has made payments over ten and one-half years totalling $228,000. The judgment has been complied with. A judgment is to be construed as of the time of its entry. Callaghan's, *Wisconsin Pleading And Practice*, sec. 37.49 (1978). Judgments are to be construed in the same manner as other written instruments. *Vaccaro v. Vaccaro*, 67 Wis.2d 477, 482, 227 N.W.2d 62 (1975). A judgment that is clear on its face is not open to construction but if it is ambiguous, construction is allowed and the court will consider the whole record, including pleadings, findings of fact and conclusion of law, and the judgment itself. *See, Lally v. Lally*, 152 Wis. 56, 138 N.W. 651 (1913) ; *Estate of Boyd*, 18 Wis.2d 379, 381, 118 N.W.2d 705 (1963). But the judgment entered in 1967 is not ambiguous as to its terms. The judgment provided for the payment of $228,000 over ten and one-half years. The trial court adopted the wife's findings of facts and conclusions of law and the judgment was based thereon.

Counsel for the wife did contend at the December 8, 1967 hearing that the findings submitted in her behalf and which the trial court adopted would have the

legal effect of excluding the payments from her income and barring a deduction for William Wright. The United States Court of Appeals for the Seventh Circuit, as cited above, disagreed. The trial court at the time of the findings and conclusions made no reference to income tax liability. Counsel for the wife argues that the trial court must be presumed to have meant that the wife should not have to pay because in *Wetzel v. Wetzel*, 35 Wis.2d 103, 110, 150 N.W.2d 482 (1967), this court said:

"We think in making a division of property or in granting alimony, or both, that consideration should be given to the tax consequences. Disregarding the effect of taxes may result in an unrealistic and unjust result. We do not hold that the trial court must adopt as a solution a method which produces the least amount of tax for the husband or for the wife, but in arriving at a determination of the business side of the divorce the tax impact is a consideration which permeates the whole process. . . ."

However, the duty placed on the judge in *Wetzel* involved a contested divorce in which the division of property, both as to the amount and the form of division, was made by the trial court. In the case before us, the division, both as to amount and form, was made by the parties by stipulation in open court. The findings of fact and conclusions of law were in the form submitted by Jean Wright's counsel and the court at her request adopted those findings and conclusions.

Counsel when entering into a divorce stipulation has the duty to consider tax consequences to his client. The trial court is obliged to consider income tax consequences in a property stipulation. *Wetzel, supra.* Failure of a trial court to consider tax consequences may constitute an abuse of discretion. But time for appeal from

a judgment for abuse of discretion has long since expired in this case. The record here shows the trial court was aware that taxes were a factor to be considered.

Secs. 71(a)(1) and 215 of the Internal Revenue Code were adopted in 1942 in order to clarify the treatment of property divisions and support payments as a consequence of divorce. M. Chirelstein, *Federal Income Taxation*, §9.03 (1977). The judgment was silent as to any intended income tax consequences.[9] The definition of alimony and property division under state law is not the same or co-extensive with the provisions for periodic and installment payments under the Internal Revenue Code. In *Seiler v. Seiler*, 48 Wis.2d 400, 180 N.W.2d 627 (1970), the wife sought relief from a property division which would constitute periodic payments under sec. 71 Internal Revenue Code. Even though it was a property division under Wisconsin law, and so referred to in this court's opinion, it was also a periodic payment under the Internal Revenue Code, includable in the wife's income for federal income tax purposes.

If there is no ambiguity on the face of the stipulation or judgment, the subjective intent of the parties is irrelevant. "Because a judgment is to be construed like any other instrument, . . . resort to the subjective intent of the parties is irrelevant." *Vaccaro v. Vaccaro, supra*, at 483; *Miller v. Miller*, 67 Wis.2d 435, 441–442, 227 N.W.2d 626 (1975).

Because the husband in the case before us had fully complied with the judgment, sec. 247.01, Stats., did not apply.

---

[9] "Generally speaking, payments continuing for more than 10 years from the date of the divorce decree or separation agreement are considered periodic payments, even though a lump sum total is specified." E. Griswold & M. Graetz, *Federal Income Taxation*, p. 833 (1976).

## II. *DID THE CIRCUIT COURT HAVE AUTHORITY UNDER SEC. 247.32, STATS. 1967, TO MODI-FY THE ORIGINAL JUDGMENT TO PRO-VIDE FOR ADDITIONAL ALIMONY?*

In a memorandum decision entered on December 20, 1977, the circuit court concluded that the original judgment did provide for certain items of alimony and thus were modifiable. These items were: a provision requiring William to pay a portion of Jean Wright's medical expenses; a provision requiring William Wright to maintain a life insurance policy on his life with Jean Wright as the beneficiary, and a provision that William Wright pay certain investment expenses incurred by Jean Wright. All were to terminate on the death or remarriage of Jean Wright. She argues these were payments in the nature of alimony thereby leaving the divorce judgment open to revision under the provisions of sec. 247.32.[10]

---

[10] Sec. 247.32, Stats., was amended in 1972 to provide that a judgment which fails to allow for alimony or only grants alimony for a limited time may not thereafter be modified as to the alimony award, but it also provided that it would only be effective for judgments rendered or granted after the effective date of the Act, April 12, 1972. §12, Chapter 220, Laws of 1971; effective April 12, 1972. Since the original judgment of divorce in this case was granted in 1968 this limitation does not apply. *Moore v. Moore*, 89 Wis.2d 665, 278 N.W.2d 881 (1979).

Sec. 247.32, Stats. 1967, provides:

"247.32. **Revision of judgment.** After a judgment providing for alimony or other allowance for the wife and children, or either of them, or for the appointment of trustees as aforesaid the court may, from time to time, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment respecting any of the said matters which such court might have made in the original action. But when a final division of the property shall have been made under s. 247.26 no other provisions shall be thereafter made for the wife."

Thus, she argues that the circuit court's award of $102,840 could be made as alimony. It was also argued on her behalf that the definition of alimony is or should be the same as a periodic payment under §71 of the Internal Revenue Code.

However, the order amending the judgment and the amended judgment that counsel for Jean Wright asks this court to uphold specifically says that the ordered payment of $102,840 is not alimony.

The court of appeals assumed without deciding, the maintenance of a life insurance policy and the payment of medical and investment expenses by William Wright, which were to terminate upon the death or remarriage of Jean Wright, were "in the nature of alimony." The court further found that even though these items might have been alimony, thus modifiable, the payment of $228,000 was a fixed amount for the division of estate and by definition non-modifiable. Implicit in this finding is that the modification of alimony, if allowed, would be limited to the scope of the original award, that is, medical, life insurance and investment expenses.

Even if it is to be assumed that the payments ordered to be made during Jean Wright's lifetime or until remarriage are "in the nature of alimony" it is clear that general alimony for the support of the wife was not given. These payments were for specific purposes and under the terms of the judgment, the circuit court did not retain jurisdiction to make an award to compensate for loss incurred by income taxes. Jurisdiction that may have been retained was limited to those specific items of life insurance, medical expenses and investment expenses. Jean Wright's counsel calls our attention to the case of *Burg v. Burg,* 1 Wis.2d 419, 85 N.W.2d 356 (1957), where a nominal amount of alimony was held to be sufficient for a later award of general alimony. However, the nominal award of alimony in *Burg* was made for the express purpose of retaining jurisdiction over alimony so that if

the need arose an award could be made in the future. It was a device designed to prevent the wife from being entirely foreclosed from receiving alimony.

In *Kronforst v. Kronforst,* 21 Wis.2d 54, 65–66, 123 N.W.2d 528 (1963), this Court said:

"There is no question but that, if the judgment is modified so as to retain jurisdiction over alimony, the county court will have jurisdiction to award alimony in the future to plaintiff upon an adequate showing of change of circumstances even though no alimony is presently awarded. . . However, it should be pointed out that a trial court should not reserve such jurisdiction to award alimony without stating its reasons for so doing. . . Such reasons may be stated in the memorandum decision, in the findings of fact, or the judgment. . . The trial court can effectively retain jurisdictions to award alimony in the future without in the meantime awarding alimony in a nominal amount, such as one dollar per month, as was done in *Hansen v. Hansen,* 259 Wis. 185, 49 N.W.2d 434 (1951), and *Burg v. Burg,* 1 Wis.2d 419, 85 N.W.2d 356 (1957)."

The original judgment in the case at bar entered in 1968 did not reserve jurisdiction to make a general alimony award as is required by *Kronforst, supra.* Paragraph twenty-second of the judgment states that alimony is denied and certainly negatives an intent on the part of the court to reserve the power to make a general award in the future.

Thus, to the extent that the award of insurance, medical and investment expenses constituted alimony, any modification of the original judgment should be constrained to those specific items. If it were held otherwise, a very limited provision for the payment of specific expenses of one spouse could later become the basis of a much larger general alimony award. This would have the effect of limiting the flexibility of the parties and the court in devising the settlement and judgment provisions.

It would be impossible to obtain the agreement of a spouse to pick up expenses such as these if it was known that gross modification could occur at a later date. Thus, the original judgment in this case demonstrates that the trial court considered the relative positions of the parties and decided against a reservation of jurisdiction for a general alimony award. The error in that judgment, if there was one, is not reviewable here since the time for appeal of that judgment has long since expired. *Anderson v. Anderson,* 8 Wis.2d 133, 98 N.W.2d 434 (1959); *see also, Steinkopf v. Steinkopf,* 165 Wis. 224, 161 N.W. 757 (1917). To the extent that the circuit court had jurisdiction to modify the alimony awarded for the insurance, medical and investment expenses, it was limited to those items and could not award $102,840 as general alimony on this ground.

Counsel for Jean Wright argues that if the installment payments are taxable under the federal law then they are also alimony under Wisconsin law. This argument would equate periodic payments under the Internal Revenue Code §71 with alimony under state law. Although the definitions and applications may overlap in many cases, they clearly are not co-extensive for all purposes and in all events. The Internal Revenue Code addresses itself to periodic and installment payments.[11] It is not

[11] "SEC. 71. *ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.* [Sec. 71(a)] (a) *GENERAL RULE*—(1) *DECREE OF DIVORCE OR SEPARATE MAINTENANCE*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which because of marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. . . .

the labels placed on the payments which are determinative under the federal tax law. It is the structure and effect of the payments which control the characterization. As has been stated:

"[a] number of cases deal with the distinction between alimony and property settlements. In approaching the issue, the [federal] courts have not always adopted the characterization of the payments given by the parties or the state court, but have considered *inter alia,* the nature of the negotiations between the parties, whether such payments are in lump sum, whether they are in addition to other support or maintenance payments specified in a decree or agreement and whether the wife has released any interest in property or other rights held by her prior to the divorce." L. Thomas Jr., *Tax Consequences Of*

"SEC. 71(c)  *PRINCIPAL SUM PAID IN INSTALLMENTS* —(1)  *GENERAL RULE*—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

"(2)  *WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS*—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received."

"SEC. 71(d)  *RULE FOR HUSBAND IN CASE OF TRANS-FERRED PROPERTY*—The husband's gross income does not include amounts received which, under subsection (a), are (1) includible in the gross income of the wife, and (2) attributable to transferred property."

*Marriage, Separation And Divorce.* ALI–ABA. Committee On Continuing Legal Education, pp. 118–119 (1976).

Under the terms of the divorce judgment in this case, William Wright was required to pay his ex-wife $228,000 in installments. The payments were not to end on her death or remarriage and the full amount was to be paid even if he had died before all payments had been made. The judgment called it a division of estate and division of property. Under Wisconsin law this was a property division and as such it is not subject to modification under our statutes. The circuit court lacked authority under sec. 247.32, Stats., to modify the original judgment.

*By the Court.*—The decision by the court of appeals is affirmed.

COFFEY, J., took no part.

WILLIAM G. CALLOW, J. *(dissenting).* The majority states "the judgment was silent as to any intended income tax consequences." Simultaneously, the majority recognizes that trial courts are obliged to consider income tax consequences in a property stipulation, *Wetzel v. Wetzel,* 35 Wis.2d 103, 110, 150 N.W.2d 482 (1967), and that the trial court in this case was aware that income tax considerations played a significant role; yet the majority concludes that the judgment unambiguously allocates to Jean Wright the income tax liability for the payments made by William to Jean. I cannot agree, and would find the judgment ambiguous as to the tax consequences of the payments to Jean Wright. Accordingly, I would remand this case to the circuit court for a determination of the original intent of the judgment.

Judgments are to be construed in the same manner as other written instruments, *Vaccaro v. Vaccaro,* 67 Wis.2d 477, 482, 227 N.W.2d 62 (1975), and are to be construed as of the time of entry. *Childs v. Dahlke,* 160 Wis. 184,

192, 151 N.W. 378 (1915). If reasonably or fairly suscep-tible to different constructions, a written instrument is ambiguous. *Lemke v. Larsen Co.*, 35 Wis.2d 427, 432, 151 N.W.2d 17 (1967).

Section 71(a)(1) of the Internal Revenue Code of 1954 provides that periodic payments are income to the ex-wife if they are received after a decree of divorce and in discharge of the husband's "legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separa-tion." This section "contemplates a payment made in pursuance of the husband's obligation of support and not in satisfaction of some property rights of the former spouse." *Van Orman v. C.I.R.*, 418 F.2d 170, 171 (7th Cir. 1969).

Under Section 71(c) of the Internal Revenue Code of 1954, installment payments discharging an obligation to pay a principal sum specified in the decree are not to be treated as "periodic payments" within the meaning of Section 71(a) unless the decree provides that the prin-cipal sum "is to be paid or may be paid over a period ending more than 10 years from the date of such decree," in which case the amount received constitutes a "periodic payment" with the meaning of Section 71(c)(2) "to the extent of 10 percent of the principal sum."

Therefore, to be includable under Section 71 in the gross income of the wife, the principal sum must be pay-able in installments over a period in excess of ten years and must be in discharge of an obligation of maintenance imposed under the decree of divorce because of the mari-tal relationship. If includable in the gross income of the wife, the payments may be deducted by the husband. IRC Section 215.

Admittedly, the judgment is silent with regard to its tax consequences. But silence cannot be equated with

unambiguity, especially where we have stated "it seems more proper to presume the trial court followed the holding of *Wetzel v. Wetzel* than that it did not." *Seiler v. Seiler,* 48 Wis.2d 400, 406, 180 N.W.2d 627 (1970). Fears that this analysis allows ambiguity to be found whenever an instrument is silent on a particular point are exaggerated, for we can find support in the record that the point at issue here, the income tax consequences, was considered in the statement of the stipulation in open court.

In my view, the judgment is fairly susceptible to different constructions. Although installment payments executing the "property settlement" were to be made over a period greater than ten years, the trial court took the specific step of denying alimony. The decree of divorce, at least on its face, imposes no obligation of maintenance. Here Jean Wright had a sufficient personal estate to accommodate her support, and the court recognized this in approving that portion of the stipulation which provided there would be no alimony. Because the parties had been married nineteen years, Jean was entitled to the portion of their accumulated estate in the sum of $228,000. I do not think it unreasonable to view the judgment as intending that Jean Wright receive $228,000 as a division of property, free of income tax liability. Nor is it entirely unreasonable to view the judgment as contemplating a division of property on the basis of the parties' respective property ownership at the time of divorce, plus payments for Jean's maintenance to be made over a period of ten and one-half years. As noted by the United States Court of Appeals, this is "a close and difficult case." *Wright v. Com'r of Int. Rev.,* 543 F.2d 593, 598 (1976).

Because I would find ambiguity in the original judgment, I would reverse the decision of the court of appeals and remand the case to the circuit court. While normally the circuit court's later judgment favoring Jean Wright should not be disturbed if the "great weight and clear

preponderance of the evidence is not against the circuit court conclusion," *Rotter v. Rotter*, 80 Wis.2d 56, 61, 257 N.W.2d 861 (1977), the circuit court's hearing did not address ambiguity in the original judgment and instead considered Jean Wright's current financial position, tax liability, and health. That is inconsistent with *Childs v. Dahlke, supra.* Accordingly, I would remand this case with directions that the circuit court hear evidence as to the original intent of the judgment.