Louis T. MAXEY, Plaintiff-Respondent and Cross-Appellant,†

v.

THE REDEVELOPMENT AUTHORITY OF THE CITY OF RACINE, Wisconsin, a municipal corporation, City of Racine, a municipal corporation, Defendants-Appellants and Cross-Respondents,†

CONTINENTAL BANK & TRUST COMPANY, a banking corporation, James R. Hammes, James R. Fish, Jane Howard Namtvedt, Ernst William Schoen-Rene, Juliet A. Baker and Ethel Ann Richards, Defendants-Respondents,†

James C. MCNEELY, as former attorney for plaintiff-respondent Louis T. Maxey, Cross-Appellant.†

Court of Appeals

No. 83–1468. Submitted on briefs April 2, 1984.— Decided June 6, 1984.
(Also reported in 353 N.W.2d 812.)

† Petitions to review and cross-review denied.

14

For the defendants-appellants, the cause was submitted on the briefs of *Joseph E. Boyle,* city attorney, of Racine.

For the defendants-respondents, the cause was submitted on the briefs of *Stanley F. Hack,* of Milwaukee, on behalf of Continental Bank and Trust, and *John W. Foley* and *Garth R. Seehawer* of *Foley, Foley & Seehawer,* of Racine, on behalf of James R. Hammes.

On behalf of James R. Fish, Jane Howard Namtvedt, Ernest William Schoen-Rene, Juliet A. Baker, and Ethel Ann Richards, a brief was filed by *Harley Brown* of *Brown & Black,* of Racine.

For the cross-appellants, the cause was submitted on the briefs of *James C. McNeely,* of Milwaukee, on behalf of James C. McNeely, and *Ronald L. Wallengang* and *Bruce R. Bauer* of *Quarles & Brady,* of Milwaukee, on behalf of Louis T. Maxey.

For the cross-respondents, the cause was submitted on the briefs of *Joseph E. Boyle,* city attorney, of Racine. Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. This is an appeal by the condemnor and cross-appeals by the condemnees in an inverse condemnation action pursuant to sec. 32.10, Stats.[1] The condemnor (Racine) appeals from that portion of the judgment which awarded, as litigation expenses, attorneys fees rendered in a separate direct condemnation action and in a proceeding for allocation of the condemnation award pursuant to sec. 32.11, Stats. The condemnee/lessee (Maxey) cross-appeals from that portion of the judgment fixing the amount allowed for attorneys fees and from the decision of the trial court refusing to make an inflation adjustment on the compensation award. The condemnees/owners (Fish, Namtvedt, Schoen-Rene, Baker and Richards) and the condemnees/mortgagees (Continental and Hammes) cross-appeal from that portion of the judgment fixing the amount allowed for attorneys fees. Finally, Maxey's former attorney of record (McNeely) cross-appeals from that portion of the judgment which awards attorneys fees directly to Maxey, rather than to himself, and from the amount of the attorneys fees awarded.

This case has an extensive history and protracted facts.[2] On August 20, 1974, Racine accomplished a "tak-

---

[1] The first sentence of sec. 32.10, Stats., provides as follows: CONDEMNATION PROCEEDINGS INSTITUTED BY PROPERTY OWNER. If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced.

[2] A full recital of the history and facts is set forth in *Maxey v. Redevelopment Authority of Racine,* 94 Wis. 2d 375, 288 N.W. 2d 794 (1980).

ing" of Maxey's property.[3] At the time of the taking, Maxey held a ninety-nine year lease on the property with approximately forty years yet to run on his leasehold interest. More than two years after the taking, Maxey commenced this inverse condemnation proceeding pursuant to sec. 32.10, Stats. Three days later, Racine commenced a direct condemnation proceeding pursuant to sec. 32.06, Stats. The trial court dismissed the inverse action concluding that Racine had previously exercised its power of condemnation. This ruling was overturned by the supreme court in *Maxey v. Redevelopment Authority of Racine*, 94 Wis. 2d 375, 288 N.W.2d 794 (1980) (*Maxey I*), and the inverse action was reinstated.[4] While this inverse action was pending, Maxey petitioned for an apportionment of the award to be made. The issue of compensation was fully litigated resulting in a jury determination of fair market value in the amount of $370,000. The competing claimants (Maxey as the lessee, the owners, and the mortgagees) to the award ultimately settled the apportionment dispute on the "courthouse steps."

### *Expenses In The Direct Condemnation Action*

Racine contends that the expenses related to the ill-fated direct condemnation action do not constitute part of the litigation expenses in this inverse condemnation action. Racine argues that the actions are completely independent and separate and that no legal basis exists upon which the litigation expenses of one can be imposed on the other. We must determine whether the expenses related to the direct action are "litigation expenses" as set forth in sec. 32.28(1), Stats., for purposes

---

[3] This issue was decided in the earlier *Maxey* case.

[4] The *Maxey* decision also addressed an appeal of the direct condemnation case which the supreme court ordered dismissed.

of this inverse action. Section 32.28(1) provides as follows:

In this section, "litigation expenses" means the sum of the costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees necessary to prepare for or participate in actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court under this chapter or chapter 275, laws of 1931, as amended (Kline Law).

We conclude the above language defining "litigation expenses" is clear and unambiguous on its face and does not require resort to rules of statutory construction in order to obtain its meaning. *Hucko v. Jos. Schlitz Brewing Co.,* 100 Wis. 2d 372, 376, 302 N.W.2d 68, 71 (Ct. App. 1981). However, the question of the application of a statute to a particular set of facts is a question of law. *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979). When considering a question of law, we owe no deference to the trial court's decision. *Behnke v. Behnke,* 103 Wis. 2d 449, 552, 309 N.W.2d 21, 22 (Ct. App. 1981).

The effect of the supreme court's decision in *Maxey I* was to invalidate the direct condemnation proceedings. Therefore, no litigation expenses could be awarded, within the context of that action, because none of the events set forth in sec. 32.28(3), Stats., governing *when* litigation expenses shall be awarded had occurred.[5]

---

[5] Section 32.28(3), Stats., provides as follows:

(3) In lieu of costs under ch. 814, the court shall award litigation expenses to the condemnee if:

(a) The proceeding is abandoned by the condemnor;

(b) The court determines that the condemnor does not have the right to condemn part or all of the property described in the jurisdictional offer or there is no necessity for its taking;

(c) The judgment is for the plaintiff in an action under s. 32.10;

(d) The award of the condemnation commission under s. 32.05(9) or 32.06(8) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least

As the trial court aptly observed in its decision:

The circumstances here are such that the action in inverse condemnation commenced in 1976 could proceed only upon successful challenge to the Authority's action for direct condemnation. . . . Absent the successful challenge to the direct condemnation proceeding, the inverse condemnation would not have continued.

In the direct action commenced by Racine, the condemnees were required to not only defend but also to attempt to preserve the integrity of this inverse proceeding. Therefore, while litigation expenses could not be awarded in the direct action, they were certainly necessary to successfully prosecute this inverse action.

---

$700 and at least 15% and neither party appeals the award to the circuit court;

(e) The jury verdict as approved by the court under s. 32.05 (11) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;

(f) The condemnee appeals an award of the condemnation commission which exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the award of the condemnation commission by at least $700 and at least 15%;

(g) The condemnor appeals the award of the condemnation commission, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;

(h) The condemnee appeals an award of the condemnation commission which does not exceed the jurisdictional offer or the highest written offer prior to the jurisdictional offer by 15%, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%; or

(i) The condemnee appeals an assessment of damages and benefits under section 10(2) of chapter 275, laws of 1931, as amended (Kline Law), if the verdict of the jury awards an amount at least $700 and at least 15% greater than the award made by the city.

It strikes us as patently illogical and unfair to deny as litigation expenses in this inverse action those expenses which the condemnees were required to incur •in resistance to the condemnor's commencement of an invalid action. Those efforts were, in the very words of the statute, "necessary to prepare for or participate in actual or anticipated proceedings . . . ." Sec. 32.28(1), Stats. Absent other statutory provisions or authority governing this question, any other conclusion would be unrealistic and unreasonable. Such interpretations are to be avoided. 2A Sutherland, Statutory Construction § 45.12 (4th ed. 1973).

Racine also contends that sec. 32.28(3)(d), Stats., bars the awarding of litigation expenses since Maxey, in the *direct* condemnation case, appealed the award of the condemnation commissioners to the circuit court. The statute provides as follows:

(3) In lieu of costs under ch. 814, the court shall award litigation expenses to the condemnee if:

. . . .

(d) The award of the condemnation commission under s. 32.05(9) or 32.06(8) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15% and neither party appeals the award to the circuit court.

However, Racine overlooks sec. 32.28(3)(c) which governs the awarding of litigation expenses in *this* inverse action. The statute provides as follows:

(3) In lieu of costs under ch. 814, the court shall award litigation expenses to the condemnee if:

. . . .

(c) The judgment is for the plaintiff in an action under s. 32.10.

In this inverse action, Maxey has obtained a judgment and is therefore entitled to his litigation expenses. We therefore conclude that Maxey, as the successful plaintiff in an inverse condemnation action, is entitled to

litigation expenses which include those expenses related to the direct condemnation case.

*Expenses Related To The Allocation Proceeding*

Based on the above reasoning and absent other authority, we would have little difficulty in accepting the condemnees' argument that expenses related to an allocation proceeding also constitute litigation expenses within the meaning of sec. 32.28(1), Stats. There is other authority, however, which leads us to conclude that expenses related to an allocation proceeding are not to be paid by the condemnor. This authority is the language and effect of sec. 32.11, Stats., as it relates to the subsequent enactment of sec. 32.28. Section 32.11 provides:

If any defect of title to or encumbrance upon any parcel of land is suggested upon any appeal, or if any person petitions the court in which an appeal is pending setting up a claim adverse to the title set out in said petition to said premises and to the money or any part thereof to be paid as compensation for the property so taken, the court shall thereupon determine the question so presented. *Judgment shall be entered on such determination, with costs to the prevailing party.* An appeal from such judgment may be taken as from a judgment in an action. [Emphasis added.]

This section expressly authorizes an allocation of the award with the awarding of costs to the prevailing party.[6] The condemnor does not pay costs in a sec. 32.11 proceeding since the only dispute is between competing claimants to the compensation award. On the other hand, sec. 32.28 defines litigation expenses and authorizes the awarding of such expenses against the condemnor

---

[6] Although Maxey's motion for "apportionment of the award" does not expressly invoke sec. 32.11, Stats., we conclude that the statute is the basis on which Maxey's request must be premised. Only Maxey and Racine address the interaction of the two statutes in their briefs.

when a condemnee qualifies under subsection (3). The threshold issue is: Which of the two statutes applies? We again note that the question as to the application of a statute to the particular facts of a case presents a question of law. *Bucyrus-Erie,* 90 Wis. 2d at 417, 280 N.W.2d at 146–47.

In the context of an allocation proceeding, we have little difficulty in concluding that sec. 32.11, Stats., is the more specific statute. Not only is it the legislative sanction for such a proceeding, but it specifically addresses the concept of "costs" which is at issue in the allocation portion of this case. Nothing in sec. 32.28, Stats., addresses these considerations, and none of the events recited in sec. 32.28(3), allowing the awarding of litigation expenses, contemplates one condemnee prevailing over another condemnee vis-a-vis a compensation award. Rather, it is sec. 32.11 which *specifically* provides that costs are to be awarded to the prevailing condemnee in an allocation proceeding.

Professor Sutherland in his treatise on statutory construction observes:

General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, *and another deals with a part of the same subject in a more detailed way,* the two should be harmonized if possible; but if there is any conflict, *the latter will prevail,* regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling. In the language of a court: "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. . . ." [Footnotes omitted; emphasis added.]

2A Sutherland, Statutory Construction § 51.05 (4th ed. 1973).[7] We therefore conclude that sec. 32.11, Stats., is the controlling statute as to this issue.

Section 32.11, Stats., does not allude to "litigation expenses" but rather utilizes the traditional language of "costs." Prior to the enactment of sec. 32.28, Stats., attorneys fees were not recoverable in a condemnation proceeding.[8] Maxey argues that the enactment of sec. 32.28 served to broaden the traditional concept of costs as recited in sec. 32.11. We disagree. We note that sec. 32.28 *retains* the concept of costs, separate and apart from disbursements and expenses (including attorneys fees). Section 32.11 similarly alludes to costs but does not embrace disbursements, expenses or attorneys fees.

[7] The above rule has been applied in both criminal and civil cases in Wisconsin. *See State v. Duffy,* 54 Wis. 2d 61, 64, 194 N.W.2d 624, 626 (1972); *Grant County Service Bureau Inc. v. Treweek,* 19 Wis. 2d 548, 552, 120 N.W.2d 634, 637–38 (1963); *David A. Ulrich, Inc. v. Town of Saukville,* 7 Wis. 2d 173, 177, 96 N.W.2d 612, 614 (1959). All of the above cases, however, present situations in which the specific statute was enacted *subsequent* to the general statute.

[8] Section 32.06(10), Stats. (1975), provided in part as follows:

(a) If the jury verdict as approved by the court exceeds the commission's award the owner shall have judgment increased by the amount of *his statutory taxable costs and disbursements,* together with legal interest from the date title vests in condemnor to date of entry of judgment on the excess of the verdict over the compensation awarded by the commission.

(b) If the jury verdict as approved by the court does not exceed the commission's award the condemnor shall have judgment against the owner for the difference between the verdict and the amount of the commission's award with legal interest on such difference from the date condemnor paid such award, plus condemnor's *statutory taxable costs and disbursements.* [Emphasis added.]

*See also Crown Zellerbach Corp. v. Department of City Development of Milwaukee,* 47 Wis. 2d 142, 177 N.W.2d 94 (1970).

Maxey argues that "costs" for purposes of a sec. 32.-11, Stats., allocation proceeding should include reasonable attorneys fees. Yet, Maxey must concede that "costs" for the purposes of sec. 32.28, Stats., does not include attorneys fees. We see no reason or requirement for interpreting the two statutes differently.

Maxey also argues that a sec. 32.11, Stats., allocation proceeding is part and parcel of the overall condemnation/compensation proceeding. We agree, but we also conclude that the specific provisions of sec. 32.11 must nonetheless apply in resolving the cost question before us. By adopting Maxey's interpretation, the "costs" provisions of sec. 32.11 would be absorbed within the "litigation expenses" concept of sec. 32.28, Stats. Such interpretation would effectively repeal sec. 32.11 by implication. Such a reading of statutes is not favored by the law, and it is the duty of the courts, if possible, to construe two statutes such that both will be operative. *State v. Klein,* 25 Wis. 2d 394, 404, 130 N.W.2d 816, 822 (1964), *cert. denied sub nom. Sterger v. Wisconsin,* 380 U.S. 951 (1965). Furthermore, if a statute contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed. *Kimberly-Clark Corp. v. Public Service Commission,* 110 Wis. 2d 455, 463, 329 N.W.2d 143, 147 (1983).

The legislative decision to award expenses to a prevailing party under sec. 32.28(3), Stats., beyond those traditionally embraced within the concept of "costs," as set forth in sec. 32.11, Stats., and other sections of the statutes, stands as a significant departure from existing law. When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes. *Mack v. Joint School District No. 3,*

92 Wis. 2d 476, 489, 285 N.W.2d 604, 610 (1979). The legislature is presumed to know that, in the absence of its changing the law, the construction put upon it by the courts will remain unchanged. *State v. Hungerford,* 84 Wis. 2d 236, 251, 267 N.W.2d 258, 266 (1978). This is especially true in those situations where the legislature has enacted legislation in an area covered in part by other previously enacted statutes. *Id.* In the absence of any express repeal or amendment to a previous statute, a new provision is presumed to be enacted in accord with prior statutes. *Id.* at 252, 267 N.W.2d at 266–67, quoting 2A Sutherland, Statutory Construction § 51.02 (4th ed. 1973).

We conclude that the enactment of sec. 32.28, Stats., did not alter the traditional concept of "costs" existing in sec. 32.11, Stats. That the legislature did not intend such a change is reflected by the language of sec. 32.28 (1) itself wherein the traditional concept of "costs" is retained as but one component of the new concept of "litigation expenses." Any inferential repeal of sec. 32.11 or the substantial broadening of its concept of "costs" to the extent argued by Maxey is better left to the legislature.[9]

■

We conclude that those expenses related to the allocation proceeding are not litigation expenses in this inverse condemnation action.[10]

---

[9] Maxey's reasoning would require "costs" in sec. 32.11, Stats., to exclude attorneys fees for purposes of allocation proceedings prior to the enactment of sec. 32.28, Stats., but to include such fees for purposes of proceeding subsequent thereto.

[10] Although our conclusion is reached by means of statutory construction, we note that Nichols on Eminent Domain reaches a similar conclusion by means of a different analysis:

In all cases where property taken for the public use is in multiple ownership, whether such ownership is qualitatively, quantitatively or otherwise considered, each of the owners of an

## McNeely's Attorneys Fees

McNeely originally represented Maxey until a substitution of attorneys when both the inverse and direct cases were before the supreme court. The August 28, 1979 order of the supreme court provided, in part, as follows:

IT IS FURTHER ORDERED that the question of fees for Attorney James C. McNeely be deferred to be determined on remand to the trial court following disposition of this appeal . . . .

Thereafter, the trial judge to whom the matter was then assigned made a specific award to McNeely for his fees. That award was appealed by both parties to this court. We reversed and remanded on the narrow grounds that the statute contemplated an award of attorneys fees only after entry of a *final* judgment. The current trial judge, on remand, made a lump-sum award of attorneys fees to Maxey, not McNeely, stating that:

Section 32.28 is clear in directing that litigation expenses shall be allowed to the condemnee, rather than to the attorney representing the condemnee.

Although the trial court correctly analyzed the statute, we conclude that it incorrectly applied it. We begin by judicially noticing that substitutions of counsel are commonplace. Apportioning attorneys fees among var-

undivided moiety, or of an interest in (or lien upon) the property, has a corresponding right to share in the award. It follows that the award may be apportioned in accordance with the respective interests of such owners. The matter of such apportionment is of no concern to the condemnor and is a problem in which only the condemnees are involved. It follows, therefore, that the claimants, among themselves, are free to agree as to the manner in which the award may be apportioned.

2 Nichols on Eminent Domain § 5.07(4) (rev. 3d ed. 1983) (footnotes omitted).

ious counsel who may have rendered services to a condemnee does no violence to the statute and carries obvious benefits to all concerned by clarifying possible areas of dispute between the condemnee and his various lawyers or between the lawyers themselves. By awarding reasonable attorneys fees as a component of "expenses" within the meaning of sec. 32.28(1), Stats., the legislature has required the trial court to evaluate all legal services rendered to a successful condemnee. A statute is to be interpreted with a view toward accomplishing its goal. The obvious goal of sec. 32.28 is to compensate condemnees for attorneys fees expenses. Statutes also are to be interpreted with knowledge of conditions existing at the time of enactment. *Shinners v. State ex rel. Laacke,* 219 Wis. 23, 29, 261 N.W. 880, 883 (1935). Since substitutions of counsel are commonplace, the statute may be construed in the light of knowledge of such a fact. We therefore conclude that the legislature foresaw a condemnee utilizing multiple, successive counsel and intended separate determinations by the trial court when fixing reasonable attorneys fees for each such counsel.

■■

Moreover, the supreme court order authorizing the substitution for Attorney McNeely contemplated the trial court fixing fees for McNeely following disposition of the appeal. In addition, this court's order of August 25, 1982, reversing and remanding the award to McNeely by the former trial judge, in no sense suggested that separate consideration of his fees was improper.

In this case, McNeely has taken an assignment of his fees from Maxey. Such assignments are valid and enforceable. *P.C. Monday Tea Co. v. Milwaukee County Expressway Commission,* 24 Wis. 2d 107, 111, 128 N.W. 2d 631, 634 (1964). Therefore, on remand, we direct the trial court to separately determine the reasonable attorneys fees for all counsel who have rendered legal services

to any party entitled to litigation expenses under sec. 32.28, Stats., and to make an award directly to McNeely pursuant to his assignment.

*Inflation Adjustment To The Compensation Award*

Maxey contends that the trial court should have adjusted the compensation award to reflect the effects of inflation since the date of the taking. We do not quarrel with Maxey's argument as to the dramatic and drastic effect of inflation on an award made in 1982 premised on a 1974 taking. Nonetheless, we observe that eminent domain statutes are in derogation of the common-law rules and must be strictly construed. *Maxey I*, 94 Wis. 2d at 399, 288 N.W.2d at 805. Section 32.06(9)(b), Stats., provides that the condemnor "shall within 70 days after the date of filing of the commission's award, pay the amount of the award plus legal interest from the date of the taking . . . ." This is the exclusive statutory method of compensation and is designed "to indemnify the claimant for loss of what the moneys due him would presumably have earned if payment had not been delayed." *Kluenker v. State*, 109 Wis. 2d 602, 607, 327 N.W.2d 145, 148 (Ct. App. 1982). Maxey's proposal may be sound and fair. It represents, however, an action more properly taken by the legislature rather than by unwarranted judicial activism. We therefore conclude that the statute represents the exclusive mode by which compensation is to be paid to a condemnee.

*Conclusion*

We affirm the trial court's rulings denying an adjustment to the compensation award for the effects of inflation and awarding, as litigation expenses, those expenses related to the direct condemnation case. We re-

verse the trial court's rulings declining to set separate attorneys fees for Attorney McNeely and awarding, as litigation expenses, those expenses related to the allocation proceeding. We remand for further proceedings to determine which of the fees pertain to the allocation proceeding such that they can be excluded as litigation expenses. We further remand for a separate determination as to the reasonable attorneys fees to be allowed to any lawyer or firm which rendered services to a party entitled to litigation expenses under sec. 32.28 (3), Stats. Any award to Attorney McNeely shall be made directly to him.

In the light of these holdings, we are not required to address the remaining issues concerning the amount of the fees set by the trial court, and we make no judgment as to the propriety of their reduction. However, the proceedings occasioned by this decision will afford the trial court an opportunity to elaborate upon its reasons for reducing the attorneys hours and the rate charged. Such findings are necessary to support an award (or reduction) as to reasonable attorneys fees.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.