IN the MATTER OF the ESTATE OF Carl FLEJTER, Deceased:

Patricia A. FLEJTER, Appellant.†

v.

ESTATE OF Carl FLEJTER, by its Personal Representative, Diane Migacz, Respondent.

Court of Appeals

*No. 99–2863. Submitted on briefs October 3, 2000.—Decided December 5, 2000.*

2001 WI App 26

(Also reported in 623 N.W.2d 552.)

†Petition to review denied.

404

On behalf of the appellant, the cause was submitted on the briefs of *Bruce A. Tammi* of *Tammi, Cohn & Cavey*, Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Charles H. Barr* of *Croen & Barr LLP*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Patricia A. Flejter appeals from that part of an order for summary judgment concluding that the personal representative of the Estate of Carl Flejter timely served and filed an objection to her claim. She also appeals from that part of a judgment denying her claim to the proceeds of an insurance policy and her claim for reimbursement for real estate taxes paid.

¶ 2. Patricia raises two issues: (1) whether the trial court erred as a matter of law when it concluded that the personal representative's objection to her claim against the estate was timely filed; and (2) whether the trial court improperly construed the final stipulation in the judgment for divorce to deny her proceeds from a life insurance policy; and to deny her reimbursement for real estate taxes she paid on her homestead. Because the trial court did not err in any respect, we affirm.

## I. BACKGROUND

¶ 3. Patricia and the decedent, Carl, were divorced by a judgment entered February 15, 1979. The divorce judgment incorporated a final stipulation signed by both parties. The final stipulation was drafted by Patricia's attorney. Carl died on July 5, 1997.

¶ 4. On November 11, 1997, the personal representative filed an application for informal administration of Carl's estate. Pursuant to statute, the probate registrar set November 19, 1997, as the date for barring claims. On November 11, 1997, Patricia filed a claim against the estate for $65,774, which was later reduced by amendment to $57,001.13. On November 12, 1997, Patricia's counsel mailed a copy of the claim to the attorney for the estate. On January 14,

1998, the personal representative served and filed an objection to the claim and demanded formal proceedings. After discovery, both parties moved for summary judgment. The issue of whether the objection to the claim was timely served and filed was raised for the first time in Patricia's summary judgment brief.

¶ 5. After hearing the summary judgment motion, the trial court ruled that the objection was timely filed. The court also found that the documentary evidence from the Social Security Administration, and the testimony of the personal representative, established that Carl was in fact, disabled. No other issues were decided at that hearing.

¶ 6. The contested claim, however, proceeded to a bench trial. As pertinent to this appeal, the claim consisted of: (1) fourteen alleged payments of real estate taxes for the claimant's homestead for the years 1992 through 1996; and (2) proceeds of an insurance policy on Carl's life in the amount of $15,000.[1] After hearing the evidence, the trial court dismissed Patricia's claim in its entirety. She now appeals.

## II. DISCUSSION

### A. *Objection to Claim.*

¶ 7. Patricia first contends that the trial court erred when it found that the personal representative's objection to her claim was timely pursuant to WIS. STAT.

---

[1] The claim also consisted of: (1) 268 items of real estate repairs allegedly occurring between 1976 and 1997; (2) five items of costs allegedly incurred in 1982 to avoid foreclosure on the home; (3) 199 items of uninsured medical expenses that allegedly incurred between 1977 and 1995; and (4) 111 alleged loans to Carl. These are not pertinent to the appeal.

§ 859.33(1) (1997–98).[2] She states her counsel filed her claim on November 11, 1997, and mailed a copy of the claim to the estate's counsel on November 12, 1997. The estate objected on January 14, 1998, sixty-three days after Patricia filed her claim. Patricia argues that the estate's objection violated the sixty-day deadline set forth in § 859.33(1). The trial court found that the objection was timely because it was served on Patricia by mail, thereby triggering the three-day mailing extension in § 801.15(5)(a).[3]

¶ 8. Patricia claims that the trial court's application of the three-day mailing extension is not supported by the language of WIS. STAT. § 859.33, its legislative history, or Wisconsin case law. The estate responds that WIS. STAT. § 801.15(5)(a), which applies generally to all civil proceedings, permits adding on three extra days to the deadline for the objection because service by

---

[2] WISCONSIN STAT. § 859.33(1) provides in pertinent part:

> HOW CONTEST INITIATED. The following persons may contest a claim . . .: the personal representative . . . . They may do so only by mailing a copy of the objection . . . to the claimant or personally serving the same upon the claimant and filing the same with the court. The objection . . . may be served at any time prior to entry of judgment on the claim, but if a copy of the claim has been mailed to or served upon the personal representative or the attorney for the estate, the objection . . . shall be served upon or mailed to the claimant and filed with the court within 60 days after the copy of the claim was mailed to or served upon the personal representative or the attorney for the estate.

All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[3] WISCONSIN STAT. § 801.15(5)(a) provides:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party:
> (a) If the notice or paper is served by mail, 3 days shall be added to the prescribed period.

mail is permitted under § 859.33(1). Thus, the objection was timely executed. We conclude that the trial court did not err in applying § 801.15(5)(a) to the sixty-day deadline for objections in § 859.33(1).

## STANDARD OF REVIEW

¶ 9. The issue in this case involves statutory construction, which presents a question of law. *See Sprague v. Sprague*, 132 Wis. 2d 68, 71, 389 N.W.2d 823, 824 (Ct. App. 1986). We review questions of law independent of the trial court's decision, although we often profit greatly from the trial court's careful and thorough analysis.

¶ 10. "Statutes for the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible." N. SINGER, 2B SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 51.02, at 122 (5th ed. 1992); *see also State v. Wagner*, 136 Wis. 2d 1, 5, 400 N.W.2d 519 (Ct. App. 1986). "Statutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. To be *in pari materia*, statutes need not have been enacted simultaneously or refer to one another." SUTHERLAND, § 51.03.

¶ 11. In *State Farm Mutual Automobile Ins. Co. v. Kelly*, 132 Wis. 2d 187, 389 N.W.2d 838 (Ct. App. 1986), quoting SUTHERLAND, we stated:

> When determining the meaning and effect of statutory sections *in pari materia*,
>
> "[i]t is assumed that whenever the legislature enacts a provision it has in mind previous statutes

relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. Thus, they all should be construed together."

*Id.* at 190 (citation omitted). Professor Sutherland further instructs that:

"General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail."

*State v. Amato*, 126 Wis. 2d 212, 217, 376 N.W.2d 75 (Ct. App. 1985) (emphasis omitted).

## ANALYSIS

■

¶ 12. Patricia contends that the sixty-day deadline in WIS. STAT. § 859.33(1) cannot be extended by the three-day mailing provision of WIS. STAT. § 801.15(5)(a). This court disagrees with that assertion. First, the rules of civil procedure, which encompass WIS. STAT. chapters 801–847, apply in all civil actions and special proceedings, except where a different procedure is prescribed by statute or rule. *See* WIS. STAT. § 801.01(2). Probate proceedings are special proceedings to which the rules of civil procedure apply. *See Estate of Stoeber v. Pierce*, 36 Wis. 2d 448, 452, 153 N.W.2d 599 (1967). There is no language in § 859.33(1) prohibiting the application of the three-day mailing extension.[4]

---

[4] Patricia argues that the language "mailed to" in addition to the language "served upon" somehow indicates the legisla-

¶ 13. Second, an examination of the development of the two statutes throughout the course of history demonstrates that the two statutes are not in conflict with each other and, in fact, can be read in harmony consistent with the trial court's decision in this case. Because we conclude that the statutes do not actually conflict, the statutory construction rule indicating that specific statutes control over general statutes does not apply. *See Maxey v. Redevelopment Authority*, 120 Wis. 2d 13, 22, 353 N.W.2d 812 (Ct. App. 1984). Here there is no dispute that mailing is an alternative method of service for personal service in civil actions and special proceedings. In a historical context, from the earliest years of our state's existence, service by mail has been recognized as an alternate method of service of process.

¶ 14. The key feature associated with service by mail is extending the time for a response, under the theory that service is complete at the moment of mailing. The general concept of adding time to documents served by mail was part of the original Field Code. Laws of 1856, ch. 120, § 315. The Field Code had an add-on provision of one day per fifty mile formula for mail service. *See id.* When the legislature adopted the Field Code, it rejected the per/mile formula and instead "simply doubled the time required when personal service was used" for a response. Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure Chapters 801–803*, 59 MARQ. L. REV. 31 (1976).

ture's intent to exclude WIS. STAT. § 801.15(5)(a)'s application to the 60-day deadline. We are not persuaded. In light of the historical analysis of the statutes, the only reasonable interpretation of the statutory language is that the "served upon" language refers to personal service, and the "mailed to" language refers to service by mail.

In 1956, by supreme court rule, WIS. STAT. § 269.36 (1955) was amended to replace the "doubling rule" with a five-day extension to the deadline when documents were served by mail. *See id.* The current three-day add-on for mailing provision contained in WIS. STAT. § 801.15(5) was created by supreme court order effective January 1, 1976. *See id.* The Judicial Council felt that three extra days for mailing was sufficient. *See id.* Thus, it can be seen that the "add-on" feature, when service is accomplished by mail, has been a constant part of our procedural statutory history.

¶ 15. The procedure, however, for filing a claim against an estate and serving an objection to it was not introduced until May 1, 1953, by supreme court order. It was codified as WIS. STAT. § 313.05(3). As pertinent to our analysis, this subsection provided that the personal representative could contest a claim by *mailing* a copy of the objection to the claimant within sixty days after either the time limited by the court for filing claims, or any order extending the time for filing the claim.

¶ 16. In 1969, WIS. STAT. § 313.05(3) was repealed and recreated as WIS. STAT. § 859.33. The mailing provision was retained, and the alternative method of personally serving the objection upon the claimant by the personal representative was added. Either method had to be accomplished "within 60 days after the last date for filing a claim or 60 days after a copy of the claim has been served upon the personal representative, whichever expires last." Laws of 1969, ch. 339, § 859.33(1).

¶ 17. In 1973, the statute was amended to provide that if a notice of claim was served upon the personal representative or attorney for the estate, any objection to the claim had to be served or mailed to the

claimant within sixty days of the last date for filing a claim. *See* Laws of 1973, ch. 233, § 4.

¶ 18. In 1989, WIS. STAT. § 859.33 was amended again to expressly provide an alternate method of initiating a claim by mail. This is the current version of the statute, which provides in pertinent part:

> [I]f a copy of the claim has been *mailed* to or served upon the personal representative or the attorney for the estate, the objection . . . shall be served upon or mailed to the claimant . . . within 60 days after the copy of the claim was mailed to or served upon the personal representative or the attorney for the estate.

WIS. STAT. § 859.33(1) (emphasis added). This provision provided a triggering event for calculating the time in which an objection must be made other than by personal service.

¶ 19. There is no doubt that the "add-on" provision in the case of service by mail had been a feature of our statutory procedural law for decades before the procedure for handling contested claims appeared in our statutes. On four separate occasions, while both provisions coexisted, our Legislature and Supreme Court have reviewed the procedure for processing claims in probate proceedings. Nevertheless, with the presumed knowledge of the mailing "add-on" provision and its consequences, neither governmental body has addressed any apparent conflict between the two statutes. If the legislature did not want § 801.15(5)(a)'s three-day mailing provision to apply to § 859.33(1)'s sixty-day time deadline, it easily could have amended either statute to so indicate.

¶ 20. Initiating the filing of a claim by mail in a probate proceeding starts the clock running for assert-

ing any objection to the claim. Because service is complete by the act of mailing, yet its date is initially unknown by the intended recipient, WIS. STAT. § 801.15(5)(a) operates to equalize service by mail with ordinary personal service, where the person served knows the exact date on which the response time begins to run. We conclude that any alleged conflict is only superficial and the statutes are not inconsistent. Thus, the two statutes are not in conflict and ought to be construed in harmony.

¶ 21. Patricia cites *Leonard v. Cattahach*, 214 Wis. 2d 236, 248, 571 N.W.2d 444 (Ct. App. 1997) for the proposition that a twenty-day period for an insurer to answer a summons and complaint mailed to it under WIS. STAT. § 601.73 is not extended by the three-day rule of WIS. STAT. § 801.15(5)(a). Therefore, she argues, the sixty-day period in WIS. STAT. § 859.33(1) ought not be extended in the case of objecting to a claim filed against an estate. Because *Leonard* is clearly distinguishable from the facts in the instant case, we are not convinced.

¶ 22. In *Leonard*, the insurer was deemed served for the purpose of commencing a cause of action by the substitute service provision of WIS. STAT. § 601.73(1). *See id.* at 242. Under § 601.73(2)(b), after the insurance commissioner has been served with two copies of the summons and complaint, he or she is required to mail a copy to the insurer who, in turn, is required to answer within twenty days of service. *See id.* In *Leonard*, the insurer failed to serve and file an answer within the twenty-day period; therefore, the victim of a default judgment argued that WIS. STAT. § 801.15(5)(a) added three days to the twenty-day period. *See id.* at 246–47.

¶ 23. We found that WIS. STAT. § 801.15(5)(a) did not apply because the mailing from the commissioner's

office to the insurer, after it accepted service on the insurer's behalf, did not constitute "service of a notice or other paper," which is the language used in § 801.15(5)(a). *See Leonard*, 214 Wis. 2d at 247–48. We also held that § 801.15(5)(a) does not apply when special rules require service to be effected through the commissioner. *See id.*

¶ 24. Unlike *Leonard*, Patricia's mailing of her claim to the personal representative, and the response objecting to the claim, constituted "service of a notice or paper," as that phrase is used in WIS. STAT. § 801.15(5)(a). Thus, our decision in *Leonard*, consistent with earlier case law, supports the estate's position and § 801.15(5)(a) does apply here.

¶ 25. In *First Wisconsin National Bank v. Nicholaou*, 87 Wis. 2d 360, 364–65, 274 N.W.2d 704 (1979), our supreme court held that WIS. STAT. § 801.15(5)(a) was inapplicable to a petition for review of a court of appeals decision because WIS. STAT. § 808.10 provides that the time limit runs from the date of the decision of the court of appeals, not from the date of service or receipt of the opinion. Similarly, in *Fredrick v. City of Janesville*, 91 Wis. 2d 572, 577–78, 283 N.W.2d 480 (Ct. App.), *rev'd on other grounds*, 92 Wis. 2d 685, 285 N.W.2d 655 (1979) we declared that § 801.15(5)(a) was inapplicable to save a filing of a notice of appeal because the time for appeal runs from the date of entry of an order or judgment, not from the date of service by mail of the notice of entry of the order or judgment.

¶ 26. The holdings in these cases lead to a simple conclusion: the "add-on" provision of WIS. STAT. § 801.15(5)(a) will apply only when service by mail is the triggering event for the counting of time in which an action is required. That condition is exactly what was present here. Therefore, we conclude that the trial

court did not err when it applied the three-day mailing extension in this case.

### B. Life Insurance Proceeds.

¶ 27. Next, Patricia asserts that the trial court erred when it construed paragraph seven of the stipulation incorporated in the judgment of divorce to deny her the proceeds of a $15,000 life insurance policy. We are not convinced.

## STANDARD OF REVIEW

¶ 28. Judgments are construed at the time of their entry and in the same manner as other written instruments. *See Wright v. Wright*, 92 Wis. 2d 246, 255, 284 N.W.2d 894 (1979). Whether a judgment is ambiguous is itself a question of law. *See Washington v. Washington*, 2000 WI 47, ¶ 26, 234 Wis. 2d 689, 611 N.W.2d 261. Words or phrases are ambiguous when they are reasonably or fairly susceptible to more than one construction. If a judgment is ambiguous, construction is allowed and the court will consider the whole record, including pleadings, findings of fact, and conclusions of law. *See Wright*, 92 Wis. 2d at 255. Lastly, the construction of a document that gives reasonable meaning to all provisions is preferable to one that leaves part of the language useless or inexplicable or creates surplusage. *See Goldmann Trust v. Goldmann*, 26 Wis. 2d 141, 147, 131 N.W.2d 902 (1965).

## ANALYSIS

¶ 29. The paragraph of the stipulation in question reads:

> The defendant [Carl] shall be awarded the following life insurance policies and he shall name and designate the plaintiff as beneficiary, and the minor children of the parties as secondary beneficiaries of the same during his lifetime, without hypothecation, but with the exception that if the defendant became disabled, the defendant would remain the beneficiary.
>
> American Bankers Life Assurance of Florida
>
> Policy No. 127854
>
> Face Amount $15,000.

Specific to our analysis are the two clauses, "but with the exception that if the defendant became disabled, the defendant should remain the beneficiary." We agree, as did the parties, that these two clauses, when read together, are ambiguous.

¶ 30. Ambiguity is present for several reasons. First, while Carl can be the owner of a life insurance policy, it is an impossibility for him to also be the beneficiary. Second, in the divorce judgment, Carl was not named as the beneficiary of any life insurance policy. Third, although the divorce judgment named Carl as the owner of various life insurance policies, it required him to name his former wife and his minor children as beneficiaries of the policies. The trial court construed the ambiguity to mean that if Carl became disabled, he could name his estate as the beneficiary of the policy. We agree that this is the correct interpretation.

¶ 31. Patricia concedes that the provisions of the judgment of divorce and the terms of the stipulation incorporated within it were the product of negotiation. Three life insurance policies were part of the marital

assets. Patricia was awarded one policy without any conditions attached. Carl was awarded the other two policies, but he had to designate Patricia and their minor children as the beneficiaries. Unlike the first policy awarded to Patricia, the latter two had a qualification attached, which indicated that Carl would remain the beneficiary if he became disabled. Regardless of how inaccurately this condition was drawn, the fact remains it was bargained for, agreed upon, and remains a condition that cannot be written out of the stipulation.[5]

¶ 32. Because it is clear that two of the policies were created by mutual agreement to allow Carl to retain some ownership benefits in the policy in the event of disability, it necessarily follows that he retained the ability to designate his estate as the beneficiary of the policies either expressly or by default. Construing the ambiguity in favor of the estate, however, does not end our analysis. The question of proof of "disability" must also be resolved.

¶ 33. Patricia contends that there was insufficient evidence to support the trial court's finding that Carl was disabled. Specifically, she argues that the trial court erred by admitting into evidence a Notice of Award of Disability Benefits addressed to her former

[5] Patricia claims the trial court erred in construing this ambiguity against her based on the fact that her attorney drafted the final stipulation. She argues that the record does not support such a ruling. We disagree. We may take into account the total record in resolving the ambiguity. Here it is self-evident from the body of the judgment of divorce and the back side of the document, that Patricia's attorney or law office prepared the judgment of divorce and the stipulation. *See Hunzinger Constr. Co. v. Granite Resources, Inc.*, 196 Wis. 2d 327, 339, 538 N.W.2d 804 (Ct. App. 1995).

husband. She asserts the trial court found that Carl was disabled solely based on the notice, which was erroneously admitted. We are not persuaded.

¶ 34. When reviewing trial court rulings regarding the admissibility of evidence, we use the erroneous exercise of discretion rubric. In evidentiary matters, we shall not reverse an erroneous exercise of a discretionary ruling unless it is prejudicial to the adverse party; that is, the result might, within reasonable probabilities, have been more favorable to the complaining party had the error not occurred. *See First Federal Financial Serv., Inc. v. Derrington's Chevron, Inc.*, 230 Wis. 2d 553, 566, 602 N.W.2d 144 (Ct. App. 1999). Findings of fact are reviewed under the clearly erroneous standard. *See State v. McMorris*, 213 Wis. 2d 156, 165, 570 N.W.2d 384 (1997).

¶ 35. Patricia contends that the contents of the notice of award are inadmissible hearsay. While conceding in her reply brief that the notice was authenticated by the personal representative, she claims it was never authenticated as a public record or some other exception to the hearsay rule to make the contents of the notice admissible. Thus, she argues there is no proof of disability to support the estate's entitlement to the life insurance proceeds. For several reasons, we reject this assertion of error.

¶ 36. WISCONSIN STAT. § 909.01 reads: "The requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." WISCONSIN STAT. § 909.015 sets forth various standards applied to achieve authentication or identification to satisfy § 909.01. Among the various categories of standards

are: (1) testimony of witness with knowledge; (2) distinctive characteristics and the like; and (3) public records or reports. *See id.*

¶ 37. Applying these standards to the record before us relating to the admission of the notice, we note the following. The personal representative testified that she and Carl had lived together since 1988. He retired from his job because of liver cancer. As the result of his condition, he was filled with fluid and experienced trouble walking and sitting. At the end of May 1997, she took him to a social security office to apply for disability benefits. On July 5, 1997, Carl died from liver cancer. After the date of death, she opened a letter addressed to Carl. The envelope containing the letter bore the name and address of the Social Security Administration. The letterhead itself indicates it was from the Social Security Administration's regional office. The letter was entitled Notice of Award and informed Carl that the agency had made a finding that, as of May 27, 1997, under its rules, he had been found to be disabled. It further set forth the date Carl would start receiving benefits and what his appeal rights were if he disagreed with the amount and terms of payment contained within the findings.

¶ 38. From this recitation, we conclude that the personal representative had direct knowledge of Carl's disabling condition. This is sufficient to sustain the trial court's finding that Carl was in fact disabled. The testimony also provides sufficient evidence to satisfy authentication of the document, given the distinct nature of the letterhead, and its contents. Therefore, the trial court did not erroneously exercise its discretion when it admitted the document.

## C. Real Estate Taxes.

¶ 39. Lastly, Patricia contends that the trial court erred when it concluded that the doctrine of laches operated to bar her claim seeking reimbursement for real estate taxes she paid on the homestead. We are not persuaded.

### STANDARD OF REVIEW

¶ 40. The doctrine of laches has been defined as: "[A] recognition that a party ought not to be heard when he has not asserted his right for unreasonable length of time or that he was lacking in diligence in discovering and asserting his right in such a manner so as to place the other party at a disadvantage." *Bade v. Badger Mut. Ins. Co.*, 31 Wis. 2d 38, 47, 142 N.W.2d 218 (1966).

¶ 41. The elements of the equitable doctrine of laches are: (1) unreasonable delay; (2) knowledge of and acquiescence in the course of events; and (3) prejudice to the party asserting laches. *See Ozaukee County v. Flessas*, 140 Wis. 2d 122, 127, 409 N.W.2d 408 (Ct. App. 1987). This defense operates

> as a bar upon the right to maintain an action by those who unduly slumber upon their rights. There is no fixed rule as to the lapse of time necessary to bar a suitor in a court of equity. Each case must stand upon its own particular facts. Great lapse of time, if reasonably excused and without damage to the defendant, has been ignored; while slight delay, accompanied by circumstances of negligence, apparent acquiescence, or change of defendant's position, has been held sufficient.

*Likens v. Likens*, 136 Wis. 321, 327, 117 N.W.2d 799 (1908).

¶ 42. Although the issue of reasonableness presents a question of law that we ordinarily review independently of the trial court's determination, because the determination of reasonableness is so intertwined with the factual findings supporting it, we offer some deference to the trial court's conclusion. *See Estate of Lohr v. Viney*, 174 Wis. 2d 468, 477–78, 497 N.W.2d 730 (Ct. App. 1993).

¶ 43. Patricia's claim for real estate taxes consisted of the taxes paid by her for the period of 1992 through 1996 in the sum of $18,085. She amended the claim to subtract a previously claimed payment of taxes for 1992, but added a claimed payment for 1983, 1997 and 1998, for an amended total of $23,964.77. The claim for taxes was one part of her six-part claim.

¶ 44. In response to the trial court's application of the doctrine of laches, Patricia contends that the estate offered no evidence to establish the presence of the three elements necessary for laches to apply. Further, she argues that her failure to pursue legal action against Carl for the real estate taxes she paid for no more than four and one-half years was not unreasonable. We are not convinced for two reasons.

¶ 45. First, from a review of the record, we note that a small portion of Patricia's claim for the real estate taxes dates back to 1983. We deem it significant that when, in 1988, she brought a motion for alleged violations of the judgment of divorce relating to child support payments, she did not complain about the real estate taxes.

¶ 46. Second, the record is void of any evidence that from 1992 to the date that the claim was filed, Patricia initiated any action from which Carl could rea-

sonably surmise that she was asserting a right to reimbursement for the payment of any real estate taxes. To the contrary, she admitted to a witness that it was her responsibility from 1993 on to pay the taxes. Furthermore, it is evident that because of Carl's death, the estate is unable to present a response to the merits of the claim and, therefore, the estate is prejudiced.

¶ 47. The reasonableness of delay is a conclusion of law dependent on how the fact-finder evaluates the totality of the evidence. From the evidence in the record, another fact-finder might readily conclude that the delay in asserting a claim for the paid real estate taxes was reasonable. That, however, is not the correct standard of review. As noted earlier, we grant deference to the fact-finder when a "reasonableness standard must be applied because of the unique position occupied by the fact-finder in assessing the quality of the evidence placed before it."

¶ 48. Patricia argues that she was aware of Carl's condition of health and decided it was inappropriate to raise the issue of reimbursement with him. It is not for this court to assess her seemingly circumspect motive. The trial court was not functioning in a vacuum. It heard her testimony relating to all six parts of her claim. In succinct terms, it found much of her testimony incredulous. This conclusion may have driven the trial court's decision on findings of fact and its ultimate discretionary application of laches. We can find no reversible fault in this exercise of discretion.

¶ 49. The trial court also based its decision on this contested claim not only on equitable grounds, but also on legal grounds. Patricia additionally contends that regardless of when the mortgage existing at the time of the divorce was paid off, Carl was obligated by

the terms of the stipulation to pay the real estate taxes until the marital homestead was sold.

¶ 50. The court concluded that a practical construction of the divorce judgment resulted in Carl, and later the estate, owing no real estate taxes beyond the time the home was to be sold by one of the triggering events set forth in the stipulation. We agree with this construction. In *Zweck v. D.P. Way Corp.*, 70 Wis. 2d 426, 435, 234 N.W.2d 921 (1975), our supreme court recognized:

> It is a well-settled principle of Wisconsin law that, where contract terms may be taken in two senses, evidence of practical construction by the parties is highly probative of the intended meaning of those terms and the court will normally adopt that interpretation of the contract which the parties themselves have adopted.

The judgment of divorce required that Carl pay the "mortgage including principal, interest, insurance and taxes until the sale of the property." The stipulation further provided that the home "shall" be sold upon the "the youngest child of the parties [Heather] attaining the age of twenty-two (22) years."[6] Heather turned twenty-two years of age on September 6, 1993.

---

[6] The complete text of the final stipulation as to this issue provided:

> The joint tenancy of the parties in the residence located at 2180 E. Spruce Court, Oak Creek, Wisconsin . . . shall be terminated and the parties shall hold said real estate as tenants in common. Upon the happening of any of the events hereinafter enumerated, said property shall be sold. The defendant shall continue to pay the mortgage, including principal, interest, insurance and taxes until the sale of the property and plaintiff shall be allowed to occupy the homestead until such sale. In addition, the plaintiff shall have the first option to purchase said real estate.

Although the record reflects that neither party took any action to sell the marital homestead, the record demonstrated that Patricia recognized she was responsible for the payment of real estate taxes after that date.

¶ 51. The trial court applied the doctrine of practical construction to reach the conclusion that even if the final stipulation incorporated into the judgment of divorce required Carl to pay the real estate taxes after the mortgage was paid off, it did not require him to pay the taxes coming due after the youngest child attained her twenty-second birthday on September 6, 1993.

¶ 52. The trial court further supported its conclusion by observing that in accord with the stipulation, Patricia had the first option to purchase Carl's interest in the marital homestead. However, she did not offer to

---

After payment of all encumbrances, usual costs of sale, and prorations, the net proceeds from the sale shall be shared equally by the parties.

NOTE: The defendant agrees to be responsible for any reasonable needed interior and exterior painting upon the plaintiff supplying the paint and materials.

The conditions upon which the sale of said property shall occur are:

1) plaintiff's remarriage;
2) plaintiff moving from said premises;
3) the youngest child of the parties attaining the age of twenty-two (22) years;
4) plaintiff's death; or
5) upon the mutual agreement of the parties.

. . . Both parties shall cooperate in the sale of the said property and the showing of same.

The defendant shall be responsible for all major repairs and maintenance expenses for the home in excess of $50 per event. The plaintiff shall pay the first $50 for each such repair. The cost of all repairs, maintenance, etc. over $50 per event and not covered by insurance, shall be shared equally by the parties.

buy it on September 6, 1993, nor did she demonstrate any intention of either buying the one-half interest or selling the home. Recognizing that it had the obligation to adopt a construction that would result in a reasonable, fair, and just stipulation, *see Capital Investments, Inc. v. Whitehall Packing Co., Inc.*, 91 Wis. 2d 178, 193, 280 N.W.2d 254 (1979), the trial court concluded it would be absurd to "permit the claimant to drag her feet and thereby require the decedent and his estate to pay the taxes indefinitely, while the claimant continued to reside in the house rent-free." The court's conclusion has support in the evidence, is well-reasoned and therefore, not erroneous.

*By the Court.*—Order affirmed.

¶ 53. FINE, J. *(dissenting)*. In my view, the statutes here are clear and the estate's objection to the claim was not timely. Accordingly, I respectfully dissent.

¶ 54. WISCONSIN STAT. § 859.33(1) requires that any objection to a claim filed against an estate "shall be served upon or mailed to the claimant and filed with the court within 60 days after the copy of the claim *was mailed to* or served upon the personal representative or the attorney for the estate." (Emphasis added.) Here, the lawyer for Patricia A. Flejter mailed her claim against the estate to the estate's attorney on November 12, 1997. The sixty-day period thus ran on January 11, 1998, which because that date is a Sunday, January 12, 1998. *See* WIS. STAT. § 801.15(1)(b) ("Notwithstanding . . . [§ ] 990.001(4), in computing any period of time prescribed or allowed . . . by any . . . statute governing actions and special proceedings, . . . the day of the act . . . from which the designated period of time begins to

run shall not be included. The last day of the period so computed shall be included, unless it is a day the clerk of courts office is closed."); WIS. STAT. §§ 990.001(4)(a) (first day excluded from calculation); 990.001(4)(b) (if Sunday is the last day, it is excluded from calculation). The estate's objection to the claim was not served until January 14, 1998. It was two days late.

¶ 55. The majority concludes that WIS. STAT. § 801.15(5)(a) makes the estate's objection timely. Section 801.15(5)(a) provides that where a party must do something "within a prescribed period after the service of a notice or other paper upon the party," "3 days shall be added to the prescribed period" "[i]f the notice or paper is served by mail." The problem with the majority's rationale, as I see it, is that—unlike the other time-computation statutes to which § 801.05(15)(a) applies—WIS. STAT. § 859.33(1) covers specifically the time within which an objection to a claim must be filed *when the claim is mailed*. Thus, in my view, it is improper to apply the more general provision in § 801.15(5)(a). *See Maxey v. Redevelopment Authority*, 120 Wis. 2d 13, 22, 353 N.W.2d 812, 817 (Ct. App. 1984) (" 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' ") (Quoting 2A SUTHERLAND, STATUTORY CONSTRUCTION § 51.05 (4th ed. 1973)).

¶ 56. The following analysis applies here:

- WISCONSIN STAT. § 801.15(5)(a) is the general statute—it applies to "all civil actions and special proceedings . . . *except where different*

*procedure is prescribed by statute or rule." See* WIS. STAT. § 801.01(2) (emphasis added).

- WISCONSIN STAT. § 859.33(1) is the specific statute—it applies to the timely filing of objections to claims against estates.

- Section 859.33(1) requires that an objection to a claim against an estate shall be served and filed "within 60 days after the copy of the claim was *mailed* to or served upon" the estate. (Emphasis added.) Section 805.15(5)(a) gives an extra three days when document to which a response must be made is *mailed* to the party.

- Section 859.33(1) thus conflicts with § 805.15(5)(a) because application of the latter provision to the former modifies the former to require that any objection to a claim filed against an estate "shall be served upon or mailed to the claimant and filed with the court within 60 *63* days after the copy of the claim *was mailed to* or served upon the personal representative or the attorney for the estate."

Accordingly, under the universal rule recognized *Maxey*, the sixty-day period set out in § 859.33(1) governs; it is also the "different procedure" envisioned by § 801.01(2) as trumping § 801.15(5)(a). The estate's objection was untimely. I would reverse.